# ANAHEIM WATER CO. v. SEMI-TROPIC WATER CO.

*(Supreme Court of California, September 27, 1883.)*

WATER RIGHTS—RIPARIAN OWNERS—PRIOR APPROPRIATION—PRE-
SCRIPTION—GRANT—ESTOPPEL.    The plaintiff, an owner of lands having
a frontage on the Santa Ana river, claimed the right, as against the de-
fendant, who also owned lands fronting on said river, to keep their irrigat-
ing ditch flowing full at all times without regard to the wants and necessi-
ties of the defendant.   Plaintiff contended that his right was founded : (1)
in grant ; (2) upon prescription ; (3) upon prior appropriation ; and (4) upon
an estoppel *in pais*.

*Held*, (1), That the deed by which the plaintiff holds conveyed no right
to divert the water of the river belonging to the defendant.   (2.)  To es-
tablish a right by prescription, the act by which it is sought to establish it
must operate as an invasion of the rights of the other party ; so, whilst there
was sufficient water flowing in the river for the needs of all parties, its use
by one could not be an invasion of any right of the other.   (3.)  The ap-
propriation by the plaintiff was not prior to that of the defendant.   (4.)
There must be some degree of turpitude in the conduct of a party before
a Court will estop him from asserting his title ; so, while there was suffi-
cient water flowing in the river for the needs of *all* parties, the defendant
was not called upon to object to the appropriation by the plaintiff, and is
not estopped from asserting his title.

Ross, J., delivered the opinion of the Court:

In its course through Los Angeles county the Santa Ana
river forms the dividing line between the ranchos Canyon de
Santa Ana, San Juan y Cajon de Santo Ana and Las Bolsas on
the one side, and the ranchos Santiago de Santa Ana and Lo-
mas de Santiago on the other.   Between the ranchos Canyon de
Santa Ana and the San Juan y Cajon de Santa Ana, and also
fronting on the river, is a small piece of land belonging to the
Government.    From the map furnished us by the respective
parties, it appears that the rancho Santiago de Santa Ana has
a frontage on the river almost equal to the combined frontage
of the ranchos Canyon de Santa Ana, San Juan y Cajon de
Santa Ana, Las Bolsas and the Government land, and reaches
from the sea to a point on the river but a little distant from
where the river enters the boundary of the county.

The plaintiffs assert a right to divert from the river suffi-
cient water to keep their ditch, which is alleged and found by

the Court below to be six feet wide at the bottom, eight feet wide at the top, and two feet deep (grade not given), flowing full at all times and seasons of the year; and in this asserted right the decree of the Court below secures them, without regard to the quantity of water that may be left in the river when such a quantity is so diverted, and irrespective of the wants and necessities of the owners of the Santiago de Santa Ana rancho, under and for whom the defendant asserts the right to divert a portion of the water of the said river. Counsel for the plaintiffs contend that the right thus asserted and adjudged them is founded, 1, in grant; 2, upon prescription; 3, upon prior appropriation, and, 4, upon an estoppel *in pais.*

It will be convenient to consider these grounds in their order.

Omitting details, the plaintiffs' title by grant, rests first upon a deed executed September 1, 1857, by Bernardo Yorba, the then owner of the rancho Canyon de Santa Ana, to Juan Pacificus Ontiveras, the then owner of the lower rancho, San Juan y Cajon de Santa Ana; and, secondly, on two deeds executed September 12, 1857, by Ontiveras and wife to George Hansen and John Frohling—the two last named persons being the predecessors in interest of the plaintiffs.

By the deed of September 1, 1857, Bernardo Yorba conveyed to Ontiveras, for the expressed consideration of two hundred dollars, a right of way in and over a certain strip of the rancho Canyon de Santa Ana commencing at a point 100 varas below a dam in the river on his said rancho, "which leads a portion of the water of said river into a ditch running through a portion of said lands, and into and through a portion of the aforesaid lands of the said Juan Pacificus Ontiveras (to wit, the rancho San Juan y Cajon de Santa Ana), and which is now used by him for irrigating a portion of said lands, and running from said point in a westerly direction to the boundary line rancho Cajon de Santa Ana," said strip of land to be sufficiently wide for the construction of a water ditch of capacity to hold and convey water sufficient to irrigate 1200 acres of land, and for the passage of a man on horseback on either side of the ditch for the purpose of inspecting and keeping it in order, * * * "and also the right to construct a

sufficient dam at the before-mentioned point in the said river in order to supply the said ditch with water for the uses and purposes above mentioned."

By one of the aforesaid deeds of September 12, 1857, Ontiveras conveyed to Hansen and Frohling the same rights and interests conveyed to him by the aforesaid deed from Yorba, and by the other deed of September 12, 1857, Ontiveras conveyed to Hansen and Frohling 1,165 acres of the rancho San Juan y Cajon de Santa Ana, afterwards and now known as the Santa Ana tract, "and also the right of way in and over a strip of land 12 varas wide running through the said rancho San Juan y Cajon de Santa Ana, for the purpose of making a ditch of capacity to carry water sufficient to irrigate the said piece of land; the said ditch to be commenced at a point on the eastern boundary line of the aforesaid rancho (San Juan y Cajon de Santa Ana), which may be most convenient for the purpose, and to run as directly as the nature of the soil and the conformation of the ground will permit, to the said tract of 1,165 acres, and also the privilege of using so much of the water from the Santa Ana river as appertains to the said rancho (San Juan y Cajon de Santa Ana), for the purpose of irrigating the same, by virtue of the grant of said rancho by the former Mexican Government, and by the laws and customs of the country at the time of such grant, and by virtue of the existing laws and customs, as may be sufficient for the purpose of irrigating the aforesaid tract of 1,165 acres of land, together with the privilege of making such other ditches through the said rancho (San Juan y Cajon de Santa Ana) as may be necessary for irrigating and cultivating said tract of land."

There can be no doubt that by the deed last mentioned, Ontiveras conveyed to Hansen and Frohling the privilege of using so much of the water of the Santa Ana river *as appertained to the rancho San Juan y Cajon de Santa Ana* as should be necessary for the 'irrigation of the Anaheim tract of 1,165 acres, provided the quantity of water appertaining to that rancho and previously unconveyed by Ontiveras, was sufficient for that purpose. But of course this grant by Ontiveras could not affect any right of the owners of the rancho Santiago de Santa Ana to the use of the water of the river.

It is said, however, that at the time of the execution of the deed from Yorba to Ontiveras, of date September 1, 1857, Yorba was the owner of an undivided interest in the rancho Santiago de Santa Ana, and that by his deed to Ontiveras he conveyed to him the right (subsequently vested in the predecessors of the plaintiffs) to divert sufficient of the water of the river for the irrigation of 1,200 acres of land upon the rancho San Juan y Cajon de Santa Ana. It is not necessary to decide whether the deed of September 1, 1857, from Yorba to Ontiveras conveyed to the latter the right to divert any of the water of the river that pertained to the rancho *Canyon* de Santa Ana; for while those who have succeeded to the rights of Yorba in that rancho were originally made defendants to this suit, the action was subsequently dismissed as to them, and the contest continued only as to those holding under the Santiago grant.

Whatever else might be held with respect to the deed from Yorba to Ontiveras, we think it perfectly clear that no right to divert any of the water of the river that appertained to the rancho *Santiago* was conveyed by it. The deed starts with the recital that "whereas the parties of the first part (Yorba and wife) are seized in fee of a certain rancho or tract of land called Canyon de Santa Ana    *    *    *    lying on and near to the river, said river being one of its boundaries, and the said party of the second part (Ontiveras) being seized in fee of a certain tract of land called San Juan y Cajon de Santa Ana    *    *    *    bounding also on said river Santa Ana and lying near to and below the lands of said Bernardo and Andrea Yorba. Now, therefore," etc., in consideration of two hundred dollars, the grantors convey to Ontiveras the right of way over a strip of the rancho Canyon de Santa Ana, commencing and running as already described, sufficiently wide for the construction of a water ditch of capacity to hold and convey water sufficient for the irrigation of 1,200 acres of land, and also the right to construct a sufficient dam in the river at the point of commencement of the strip over which the right of way is conveyed, in order to supply the said ditch with water for the irrigation of the 1,200 acres. There is no express grant in this deed by Yorba—and we speak of him as

the grantor because the Court below found that, though his wife joined him in the deed, she had no interest in the property—of any right on the part of Ontiveras to divert any of the water of the river, and certainly no express grant of the privilege of diverting any of the water of the river that pertained to the grantor, as owner of an undivided interest in the rancho Santiago de Santa Ana. Impliedly it undoubtedly recognized the right in Ontiveras to divert a part of the water, but it must be remembered that by reason of his proprietorship of the rancho San Juan y Cajon de Santa Ana, Ontiveras then possessed the right to divert such portion of the water of the river, for the purposes of irrigation, as appertained to his rancho. And the fact that he was then diverting a portion of the said water for that purpose is expressly recited in the deed; for by its terms the strip of the Canyon rancho over which Yorba conveys to him the right of way for a ditch, is made to commence at a point 100 varas below a dam in the river, on the Canyon rancho, "which leads a portion of the water of said river into a ditch running through a portion of said lands, and into and through a portion of the aforesaid lands of the said Juan Pacificus Ontiveras, and which is now used by the said Juan Pacificus Ontiveras for irrigating a portion of his said lands." But no reference whatever is made in the deed to the rancho Santiago. Irrigation upon that rancho, as well as upon the ranchos Canyon and Cajon, with the water of the river was then carried on, and had been carried on for many years. There was then, according to the findings of the Court below, and continued to be until within a year or two prior to the commencement of this action in 1877, sufficient water flowing in the river to supply the wants of all the parties bordering on the stream. *Under these circumstances* certainly, the owners of each of these ranchos were entitled to divert, for the purposes of irrigation on their respective tracts, such portion of the water of the river as appertained to their respective ranchos, due regard being had to the rights of each and all the others. Ontiveras, as owner of the San Juan y Cajon de Santa Ana, was entitled to divert, for the purposes of irrigation upon his rancho, such portion of the water as rightly appertained thereto; and in the deed by which he conveyed to

Hansen and Frohling the Anaheim tract of 1,165 acres, he expressly granted to them the privilege of using so much of the water of the river, appertaining to his rancho, as should be sufficient for the irrigation of that tract. But in the deed from Yorba to Ontiveras, executed but a few days before, there is no such language. Yorba thereby conveyed to Ontiveras a right of way over his rancho Canyon for the construction of a ditch of capacity to hold and convey water sufficient for the irrigation of 1,200 acres of the rancho San Juan y Cajon de Santa Ana, and also the right to construct a sufficient dam in the river at a designated point upon the Canyon rancho, in order to supply the ditch with water for the 1,200 acres. Whether the water thus to be diverted was the water that appertained to Ontiveras, as the owner of the rancho San Juan y Cajon de Santa Ana, or water that appertained to Yorba as the owner of the rancho Canyon de Santa Ana, need not be determined, for the reason already assigned; but by no construction of the deed consistent with reason or authority, can it be held to be any part of the water appertaining to the owners of the rancho Santiago de Santa Ana, which is situated upon the opposite side of the river, and which is in no manner alluded to in the Yorba deed. And even were this otherwise, it is clear that Yorba's deed could not affect the rights of the other owners of the Santiago rancho.

*Second*—The title by prescription relied on by the plaintiffs is based on the fact found by the Court below, to the effect that from the 1st of January, 1858, until within a year or two prior to the commencement of this action, the plaintiffs, their predecessors, etc., quietly, openly, notoriously and continuously appropriated, used and enjoyed enough of the water of the river to keep their ditch, which was constructed in and over the strip of land described in the deed from Yorba to Ontiveras, flowing full to its utmost capacity at all times and seasons of the year, claiming the right and title so to do, adversely to the whole world, and so diverted, appropriated, used and enjoyed the said water without let, hindrance or objection by any person whomsoever; and that the owners of the Santiago rancho, with knowledge thereof, stood by and made no objection. But the Court below also found that during the

same time the water of the river was diverted, appropriated, used and enjoyed by the owners of the ranchos Santiago and Canyon for the irrigation of their respective tracts, and, further, that while the diversion and use of the water by the respective parties, and upon the respective ranchos and tracts of land as stated in the findings, "has been done and claimed as of right, and claimed to be done adversely to all others, still, until within a year or two prior to the commencement of this action, there has been no interference of serious importance with the diversion, or attempted diversion, of any one by any of the others, there having, prior to that time, been sufficient water flowing in the river to supply the respective wants and demands of all the parties; but since then, that is, within a year or two prior to this suit, on account of the increased appropriations and diversions above the ditches of all the parties, water has become scarce and insufficient to supply the demands and necessities of all the parties. That except as to non-interference and failure to object under the circumstances aforesaid, there has never been any acquiescence or consent to the user of the water as to any person, party or corporation, by the owners or claimants of any of the ranchos mentioned in these findings, or of any of the parties hereto, or their predecessors or grantors. But ever since water has become scarce, as aforesaid, each party has respectively asserted, and at all times attempted, as best they could, to maintain the rights as respectively claimed by them."

In the face of such facts as these, how can we be expected to hold that, as against the owners of the Santiago rancho, the plaintiffs have established any prescriptive right? In order to establish a right by prescription, the acts by which it is sought to establish it must operate as an invasion of the right of the party against whom it is set up. The enjoyment relied upon must be of such a character as to afford ground for an action by the other party. This is thoroughly settled. Now it is very clear that while there was sufficient water flowing in the river to supply the wants and demands of all the parties, its use by one could not be an invasion of any right of any other; and as the Court below found, as a fact, that until within a year or two prior to the commencement of the action, there

was sufficient water flowing in the river to supply the wants
and demands of all the parties, it is plain that the plaintiffs, as
against the owners of the Santiago rancho, have acquired no
right by prescription.

*Third*—As against the owners of the rancho Santiago, have
the plaintiffs established a right to divert the water in question
by reason of its prior appropriation and beneficial use?

This claim of the plaintiffs is negatived by the facts found
by the Court below. As seen already, there was, according to
the finding, sufficient water flowing in the river to supply the
wants and demands of the owners of each of the ranchos
mentioned, until within a year or two prior to the commence-
ment of this action in 1877. It also appears from the record
that from an early day irrigation with the water of the river
was carried on upon the rancho Santiago by its owners
and their tenants. It was so carried on in 1857, when the
conveyances from Ontiveras were made to the predecessors of
the plaintiffs, under which the plaintiffs' ditch was constructed
and sufficient of the water of the river diverted and appro-
priated to keep it flowing full to its utmost capacity at all times
and seasons of the year, for the purpose of irrigating the Ana-
heim tract of 1,165 acres. But this appropriation by the pre-
decessors of the plaintiffs was, according to the findings of the
Court below, neither prior to the use of the water of the river
by the owners of the Santiago rancho, nor did in any manner
interfere with the use of it by the latter; for, according to the
findings, there was then enough water flowing in the river to
supply the wants and demands of *all* the parties, and contin-
ued to be until within a year or two prior to 1877.

As observed already, the Court below found that at the time
of the purchase by the predecessors of the plaintiffs from On-
tiveras in 1857, and for years before, the owners of the Santi-
ago rancho were and had been using the water of the river for
the irrigation of their rancho; but the Court further found
that prior to 1871 "said irrigation and cultivation•was irreg-
ular both as to time and place, and also as to ditches, some
years more and some years less, at one place one year, and at a
different place another year, and during some years some of
the ditches were not used, so that during some years not more

than three irrigating heads, being each one hundred square inches under four inches pressure, were diverted and used during some years, and their ditches were often neglected and filled with weeds and dirt, and their capacity at times greatly diminished, and such was their condition in 1857."

But that irrigation upon the Santiago rancho was, prior to 1871, "irregular, some years more and some years less, at one place one year, and at a different place another year," and that during some years some of the ditches were not used, and other years some of them were neglected, is unimportant. The fact remains that the owners of the rancho did use the water of the river according to their wants and demands, and were so using three irrigating heads of it in 1857; and, further, there was at all times an abundant supply in the river for all parties until within a year or two prior to 1877.

It may be added, that while the Court below found that the water diverted and appropriated by the predecessors of the plaintiffs in 1857, that is to say, sufficient of the water of the river to keep their ditch flowing full to its utmost capacity at all times and seasons of the year, for the purpose of irrigating the Anaheim tract of 1,165 acres, "was then, ever since has been, and now is, necessary for that purpose;" it also found as a fact that the plaintiffs have sold water to parties on said Cajon rancho, *outside* the Anaheim tract, "commencing about 1869, and gradually increasing said outside supply to about 600 or 800 acres, except in very dry seasons, as existing at the time of the diversions complained of, when *about* all the water in the ditch is necessary for the Anaheim tract."

These findings are not only inconsistent, but it certainly cannot be that water diverted and appropriated for the purpose of irrigating the Anaheim tract can be sold by the plaintiffs to supply other lands, to the injury of the owners of the rancho Santiago, who, from a long time anterior to the purchase of the plaintiffs' predecessors, have been accustomed to use a portion of the water of the river for the irrigation of that rancho.

*Fourth*—With respect to the estoppel relied on by the plaintiffs, it is sufficient to say that, as the findings of the Court below show that there was sufficient water flowing in the river in

1857, and for nearly twenty years thereafter, to supply the wants and demands of the owners of each of the ranchos bordering on the stream, the owners of the Santiago rancho were neither called upon to object to the diversion and appropriation by the predecessors of the plaintiffs, nor had they any right to object thereto. No right of theirs was interfered with. Nor does it appear that there was any fraud, misrepresentation or concealment of any kind practiced upon the predecessors of the plaintiffs by the owners of the rancho Santiago. In a recent case we had occasion to quote with approval what was held here in the case of *Biddle Boggs* v. *Merced Mining Co.*, 14 Cal., 368: "There must be some degree of turpitude in the conduct of a party before a Court of equity will stop him from the assertion of his title—the effect of the estoppel being to forfeit his property, and transfer its enjoyment to another."

The findings in this case show that the scarcity of water in the river that first made itself felt within a year or two prior to the commencement of this action, was caused by diversions made by parties above the highest ditch of any of the parties to this controversy. With the scarcity of the water arose disputes between the respective claimants. It is not strange that this was so, for in the region in question, water for irrigation is essential to the proper cultivation and enjoyment of the land. Upon the Anaheim tract, as well as upon the rancho Santiago, numerous and extensive and valuable vineyards and orchards have been raised with the aid of the water of this river. Its continued use is all-important to all parties concerned. The plaintiffs, by virtue of the purchase of their predecessors from Ontiveras, and their subsequent appropriation and use, are undoubtedly justly entitled to such portion of the water of the river appertaining to the rancho San Juan y Cajon de Santa Ana as is sufficient for the proper irrigation of the Anaheim tract. Whether, if the portion of the water appertaining to that rancho is insufficient for that purpose, the plaintiffs are entitled to enough of the water of the river appertaining to the rancho Canyon de Santa Ana to make good the deficiency, by virtue of the deed from Yorba to Ontiveras, we cannot now decide, for the reason already explained. But as, for the reasons already given, the plaintiffs have acquired no right to any portion of the water that appertains to the owners

of the rancho Santiago de Santa Ana, the decree of the Court below which secures to the plaintiffs sufficient of the water of the river to keep their ditch flowing full to its utmost capacity at all times and seasons of the year, without regard to the quantity of water that may be left in the river after such diversion, and irrespective of the wants and necessities of the owners of the rancho Santiago de Santa Ana, cannot be sustained. We must, therefore, reverse the judgment and remand the cause for a new trial. In doing so, we think it not improper to suggest, in view of the value of the water in dispute and the large interests at stake, whether it is not advisable for the parties to the controversy to divide the water upon an equitable basis, and devote the money that may otherwise be expended in litigation, in the proper development and judicious use of it.

Judgment and order reversed, and cause remanded for a new trial.

I concur, MYRICK, J.

I concur: I am of opinion that the plaintiffs have failed to make out any case for relief upon the grounds of prescription or estoppel *in pais*. The reasoning on these points in the opinion of Justice Ross is conclusive.

On whatever rules the rights of the parties herein are to be admeasured, whether by the rules applicable to appropriation, or those applicable to the common law doctrine of riparian rights, the rights of the parties are at least equal; neither has made out a claim superior to the other. There has never been any exclusive appropriation by plaintiffs prior to that of defendant, and the same may be said of the appropriation by defendant. I can see no exclusive appropriation by either party of the water of the stream, or any part of it. The use of the water has always been had by either party with the observance of the right of the other to a reasonable use of it for irrigation. Under these circumstances the parties must be held to have at least equal rights to use the water for the purpose indicated. The Court, therefore, in adjudging that the plaintiffs have, under all circumstances, the right to have their ditch flow full of water to the exclusion of the defendant, has violated the equality of right above mentioned, and has fallen into an error for which the case must be tried anew. The

foregoing, in my opinion, is the substance of the able and elaborate opinion of Justice Ross, and I therefore concur in it. It is apparent that no question is made, in this case, as to the right to the use of the water for domestic purposes, and of course nothing is herein ruled in that regard.

THORNTON, J.

The case as made out in the Court below failed to establish an exclusive right of ownership arising out of prescription or estoppel, in the water of the Santa Ana river, to the extent claimed by the plaintiffs.

In my judgment, the rights of the respective parties originated in a riparian source, are held by them in common, and invest each with equal rights to the use and enjoyment of the water of the stream. Being held in common, it is well settled that in a controversy between such owners as to their rights, it is the duty of a Court of equity to determine the respective rights of the parties so as to give to each the just proportion to which he may be entitled, and, if necessary, regulate the use between them according to their rights. (*Lyon* v. *McLaughlin*, 32 Vt., 423; *Arthur* v. *Case*, 1 Paige, 447; *Belknap* v. *Trimble*, 3 *Id.*, 601; *Webber* v. *Gage*, 39 N. H., 182; *Bardwell* v. *Ames*, 22 Pick., 353; *Ballow* v. *Hopkinston*, 4 Gray, 324; *Booth* v. *Driscoll*, 20 Conn., 555; *Brown* v. *Ashley*, 16 Nev., 316.) That the principle was not observed in the adjudication of this case, and I agree that the judgment should be reversed, and the cause remanded for a new trial.          McKEE, J.