[No. 19453.    Department Two.—July 11, 1895.]

E. T. HARGRAVE ET AL., APPELLANTS, *v.* D. C. COOK ET AL., RESPONDENTS.

RIPARIAN RIGHTS — OWNERSHIP — REASONABLE USE — IRRIGATION. — The right of a riparian proprietor to the waters of a stream flowing through or along his land is not a right of ownership in or to the waters, but is a usufructuary right, including a right to make a reasonable use of a reasonable quantity for irrigation, returning the surplus to the natural channel, that it may flow on in the accustomed mode to the lands below.

ID.—EFFECT OF NONUSER — LOSS OF RIGHTS.—None of the rights of a riparian proprietor to put the water to legitimate uses can be lost by mere nonuser, but they are attached to the soil and pass with it, and may be lost by grant, condemnation, or prescription.

ID.—EFFECT OF DIVERSION BELOW RIPARIAN OWNER — ESTOPPEL. — An upper riparian owner has no concern with any use or diversion of the water after it has passed his land, and none of his rights can be impaired thereby, and the fact that such owner never attempted to interfere with a diversion of the water below his land is immaterial, and can raise no estoppel against him.

ID.—PRESCRIPTIVE RIGHT TO DIVERT WATER — ACQUIESCENCE—ABSENCE OF CAUSE OF ACTION.—There can be no prescriptive right to divert the water of a stream, as against an upper riparian proprietor, at a point below his land by reason of his long acquiescence in such diversion and use; and there can be no title by prescription where the acts constituting the alleged adverse use are not of such a nature as to give a cause of action in favor of the person against whom the acts are performed.

ID.—RIGHTS OF PRIOR APPROPRIATOR — CHANGE OF USE.—As between appropriators of water, an appropriator who is prior in time and superior in location acquires the ownership of water used for proper objects, with the right to change the place and purpose of use, so long as the change does not injuriously affect the rights of subsequent appropriators.

ID.—EASEMENT IN PRIVATE LAND—CHANGE OF POINT OF DIVERSION.—An appropriator of water upon government land retains his rights when the land passes into private ownership, and, while in the exercise of these rights, may change the point of diverson to another place upon the land when required to enable him to take the amount of water to which he has ownership, and when others are not injured by the change; but his rights are only those of the grantee of an easement, and he is limited to the exigencies of the situation, and has no right to make a change arbitrarily and at will, and, as to other lands not subject to his easement, and, as to other claimants and owners, he can make no change at all which injuriously affects them or their rights.

APPEAL from an order of the Superior Court of Ventura County granting a new trial. B. T. WILLIAMS, Judge.

The facts are stated in the opinion of the court.

*Blackstock & Ewing,* for Appellants.

The plaintiff could have brought an action to determine an adverse claim whether damaged or not, and is therefore subject to the bar of the statute of limitations. (Code Civ. Proc., sec. 738; *Heilbron* v. *Water Ditch Co.,* 75 Cal. 123; *Moore* v. *Clear Lake Water Works,* 68 Cal. 146; *Stein* v. *Burden,* 24 Ala. 130, 60 Am. Dec. 453; Gould on Waters, sec. 378; *Conkling* v. *Pacific Imp. Co.,* 87 Cal. 296; *Peregoy* v. *Sellick,* 79 Cal. 568.)

*Barnes & Selby*, and *Chapman & Hendrick*, for Respondents.

A riparian owner may reasonably use the waters of a stream for irrigation. (*Lux* v. *Haggin*, 69 Cal. 255.) There can be no prescription where there is no invasion of a right which is the foundation of an action. (*Anaheim Water Co.* v. *Semi-Tropic Water Co.*, 64 Cal. 192; *Sullivan* v. *Zeiner*, 98 Cal. 346; *Hanson* v. *McCue*, 42 Cal. 303; 10 Am. Rep. 299; *Lakeside Ditch Co.* v. *Crane*, 80 Cal. 181; *Alta etc. Co.* v. *Hancock*, 85 Cal. 219; 20 Am. St. Rep. 217; *Thomas* v. *England*, 71 Cal. 456.)

HENSHAW, J.—Appeal from the order granting a new trial.

Plaintiffs claim ownership in common with some of the named defendants in a certain described ditch, flume, water right, and right of way, by means of which they diverted the waters of Piru river to their non-riparian lands. The ditch was known as the Hargrave & Comfort ditch. They averred the adverse claims of defendants and asked for a decree settling their rights and enjoining defendants from further assertion of such or any claims.

The defendants answered in accordance with their various claims; some asserting ownership in the ditch and water rights, others declaring upon superior rights by prescription. But, in particular, the defendant Cook claimed the rights of a riparian owner to the water of the creek, which rights are pleaded as superior to those of the ditch-owners.

Stripped of matters unnecessary to this consideration the following are the essential facts: Defendant Cook is the owner of the Temescal rancho under United States patent issued in 1871. Piru river flows through this ranch, and thence across the northwest quarter of section 20. About the year 1875, section 20 being public land of the United States, plaintiffs' predecessors in interest constructed the ditch and diverted part of the waters of the river with the acquiescence of the then

occupant of the land; and, as the court found, plaintiffs and their grantors, " for more than fourteen years next preceding the commencement of this suit, have been in the quiet, peaceable, open, adverse, notorious, uninterrupted, and exclusive possession, claiming right and title of said water ditch, with the right to divert and use the waters of said Piru river to the extent of 271 inches measured under four-inch pressure."

The court further found that the predecessors in interest of the defendant Cook in the Temescal rancho did not use any of the waters of said stream, except at rare and irregular intervals, and in small quantities, and that they at all times knew that the said Hargrave & Comfort ditch was being continuously used, and that the waters of the stream were being diverted and conducted to lands not riparian to the stream, and that such use, " with their full knowledge and acquiescence," had been continuous for a period exceeding ten years before Cook acquired title to the Temescal rancho and the northwest quarter of section 20. Also, it is found that when Cook acquired title he knew of the use of the water by defendants, and " did not object to such use, but fully acquiesced therein until about the commencement of this suit, and that the rights of plaintiffs were not disputed until long after they had fully acquired a prescriptive right with their co-owners to a part of the waters of the said stream."

The waters of Piru river had in the past been little used by the owners of the Temescal rancho, but, upon Cook's acquisition of it, he began the planting of extensive orchards of fruit-bearing trees until, as he pleads, there were at the commencement of the suit over two millions of orchard and nursery trees dependent upon the waters of the Piru river for irrigation. This use of the water by Cook naturally lessened the flow of the stream to plaintiffs' ditch, decreased the supply available for their purposes, and led to this action.

The Piru Water Company, another of the defendants, took water from the Piru river by means of a ditch

higher up the stream than the ditch of plaintiffs. Its ditch at the time of the action tapped the river upon the land of the Temescal rancho, and carried the water over and across it to other nonriparian lands. Its right by prescription was claimed to be prior and superior to the right of the owners of the Hargrave & Comfort ditch, and this seems to have been conceded, though the precise extent of the right is a matter of controversy which will be considered hereafter.

The court, by its judgment and decree, awarded: 1. The right to Cook to use the waters flowing over the Temescal rancho for domestic uses and purposes and the watering of stock; 2. The right to Cook to a hundred inches of water, under four-inch pressure, drawn off in the Esperanza ditch; 3. The right to the Piru Water Company to an amount not in excess of two hundred and eighty-five inches, or so much thereof as may be necessary for the uses accustomed to be made upon certain nonriparian lands; 4. The right to the owners of the Hargrave & Comfort ditch to an amount not in excess of two hundred and seventy-one inches, or so much thereof as may be necessary for the uses accustomed to be made, and in accordance with the amounts by the owners respectively accustomed to be used upon certain described nonriparian lands; and 5. The right to Cook, "after the wants and necessities of the above prior owners have been fully and reasonably supplied," to use the surplus waters for irrigation on the lands of his ranch.

By this decree the right of an upper riparian owner to the use of the water for irrigating purposes is made subordinate to the right of a lower appropriator, because at the time the right of appropriation vested the riparian owner was not actually using the water for the designated purpose.

This view, appellants contend, is sound. It is the view taken by the court, upon trial, and expressed by the judge in the following language: "I think the law is well settled in this state that a person diverting and

appropriating to a useful purpose the waters of a running stream may acquire an ownership in the right to the use of such waters, to the amount he has appropriated to such useful purpose, by operation of the statute of limitation, even against an upper riparian owner, although the point of diversion is without the limits of the lands of such riparian owner, except as against any lawful use to which the riparian owner had or was making of the waters during the time of the creation of the right in the appropriator by operation of statute of limitations."

Upon the hearing of the motion for a new trial the court receded from this position, after the consideration of authorities not before called to its attention, and ordered a new trial. Other grounds were urged in support of the motion. Such of them as are deemed necessary will receive attention, but the principal point inviting consideration is the one above set forth.

The right of a riparian proprietor in or to the waters of a stream flowing through or along his land is not the right of ownership in or to those waters, but is a usufructuary right—a right, amongst others, to make a reasonable use of a reasonable quantity for irrigation, returning the surplus to the natural channel, that it may flow on in the accustomed mode to lands below. If his needs do not prompt him to make any use of them he still has the right to have them flow onto, and along, and over, his land in their usual way, excepting as the accustomed flow may be changed by the act of God, or as the amount of it may be decreased by the reasonable use of upper owners and riparian proprietors. But none of his rights to put the water to legitimate uses is lost by mere nonuser. His rights are not easements nor appurtenances to his holding. They are not the rights acquired by appropriation or by prescriptive use. They are attached to the soil and pass with it (*Lux* v. *Haggin*, 69 Cal. 255), and may be lost only by grant, condemnation, or prescription.

With any use or diversion of the water after it has

passed his land the upper riparian proprietor, having no ownership in and no longer any rights to it, would have no concern. (The right to forbid the lower owner from backing the water and flooding his land not being here under consideration.) None of his rights would or could be impaired thereby, and without such an impairment he would be without injury, and, consequently, without cause for complaint or redress. "His right extends no further than the boundary of his own estate. He cannot complain of the mere facts of the diversion of the watercourse either above or below him, if, within the limits of his own property, it is allowed to follow its accustomed channel." (*Lux* v. *Haggin, supra.*)

The rancho Temescal was never public land within the meaning of the United States statutes affecting appropriations of water. The riparian rights of the owners of private land are fully protected by section 1422 of the Civil Code. One who bases his right solely upon appropriation made of waters flowing over land which at the time of the appropriation was part of the public domain acquires thereby no right superior to or in derogation of those attaching to lands riparian to the same stream which at the time of the appropriation were held in private ownership.

The "acquiescence" of Cook and his predecessors in interest in the acts of the owners of the Hargrave & Comfort ditch, as declared by the findings, receives this support from the evidence, and no more: With knowledge of these acts they never attempted to interfere with them. But, before one can acquire a right to the doing of an act in which another so acquiesces, the act itself must amount to an invasion of that other's rights, and the doing must either have been so long continued as that a prescriptive claim can be supported upon the theory that the acquiescence presupposes a grant, or under such circumstances as will raise an estoppel against the objecting party. But, as the upper riparian proprietor's right to object to any use or diversion of the water below ceased when it had flowed past his

boundary, any such use could not work an invasion of his rights, and he was not called upon to protest against it. Thus, in *Hanson* v. *McCue*, 42 Cal. 303, 10 Am. Rep. 299, the waters of a spring had been appropriated below by plaintiff. The time arrived when defendant, upon whose land the spring was situated, desired to make use of the waters which fed it; a prescriptive right in plaintiff was urged by reason of defendant's long acquiescence in the use, but this court said: "It will be seen at once that McCue, or those from whom he purchased, could, in the nature of things, have no right to complain that the water in the artificial channel, after leaving the spring, was appropriated below by the owners of the Hansen lot. If they had no right to complain in the first instance we are not driven to the presumption of the grant of an easement to account for why they did not complain." The same principle is announced in *Lakeside Ditch Co.* v. *Crane*, 80 Cal. 181, where a lower appropriator claimed a right to a certain amount of water against an appropriator whose ditch was higher up the stream. The finding was that plaintiff diverted his ditch full of water "whenever there was water in the stream to fill it," and a right superior and adverse to that of defendant was predicated upon this. But the court said: "If the plaintiff's ditch was simply diverting water which defendants allowed to pass down the stream while the headgate of their ditch was closed the act of plaintiff in diverting the water thus permitted to pass down could not, in the nature of things, be adverse to the defendants. The latter could not complain, and title by prescription cannot be acquired unless the acts constituting the adverse use are of such a nature as to give a cause of action in favor of the person against whom the acts are performed." To like effect are the cases of *Anaheim Water Co.* v. *Semi-Tropic Water Co.*, 64 Cal. 192, and *Alta Land & Water Co.* v. *Hancock*, 85 Cal. 219; 20 Am. St. Rep. 217.

No estoppel is pleaded or found, nor would the facts warrant such a finding.

The motion for a new trial was properly granted upon the ground considered.

In contemplation of the new trial it is proper to say that the rights of defendant Cook and of defendant the Piru Water Company, of which Cook is a stockholder, are in issue in this action only to the extent that their rights affect or are affected by the rights of the plaintiffs. As between themselves their rights are not subject here to determination, excepting so far as may be necessary to do complete justice to plaintiffs, and excepting so far as between themselves they have tendered and joined hostile issues. The limitation upon the use of the water appropriated by the Piru Water Company is not warranted by the evidence. So far as plaintiffs are concerned the Piru Water Company is prior in time and superior in location, and had acquired the ownership of a given amount of water while that water was used for proper objects, with the right to change the place and purpose of use so long as the change did not injuriously affect the rights of the subsequent appropriators and claimants. (*Ramelli* v. *Irish*, 96 Cal. 214; *Jacob* v. *Lorenz*, 98 Cal. 332; *Davis* v. *Gale*, 32 Cal. 26; 91 Am. Dec. 554; Pomeroy on Water Rights, sec. 69.)

Upon the question of the right of the owners of the Hargrave & Comfort ditch to extend it five or six hundred feet over the northwest quarter of section 20, now the land of Cook, the better to facilitate the obtaining of their water, we do not deem it proper, upon this appeal, to do more than point out that, while an appropriator of water upon government land retains his rights when the land passes into private ownership, by virtue of the confirmatory statutes of the United States (14 U. S. Stats. at Large, 253; 16 U. S. Stats. at Large, 218), and, while in the exercise of these rights, he may change the point of diversion to another place upon the servient tenement, he is nevertheless limited in so doing to the exigencies of the situation, and has no right to make such change arbitrarily and at will. He may do so when under certain circumstances it is required to

enable him to take the amount of water to which he has ownership, but then only when "others are not injured by the change." (Civ. Code, sec. 1412.) His rights are the rights of the grantee of an easement, and extend, in the matter of changing the point of diversion, no further than the boundaries of the servient tenement, and even when entering upon this he is under obligation only to make reasonable changes with reasonable care, and also to repair, so far as possible, whatever damage his labors may have occasioned (Gale and Whately on Easements, 235); as to lands other than those subject to his easement, and as to other claimants and owners, he can make no change at all which injuriously affects them or their rights.

The order appealed from is affirmed.

TEMPLE, J., and McFARLAND, J., concurred.