[Sac. No. 3243.  In Bank.—November 3, 1922.]

## CHARLES M. OLIVER, Appellant, v. ISAAC ROBNETT et al., Respondents.

[1] WATERS AND WATER RIGHTS—PRESCRIPTION—TITLE—USE.—Water must not only be actually diverted and adversely used to give title by prescription, but such title extends only to so much of the water so used as is reasonably necessary for the purpose for which it is used.

[2] ID.—RIPARIAN OWNERS—PRESCRIPTION.—An upper riparian owner who is using water from the stream is presumed to be doing so in the exercise of his right so to do, and consequently if he has openly, notoriously and continuously used a certain amount of water for the statutory period, this right to the extent that it is a mere exercise of the riparian right, has no effect on the riparian rights of the lower riparian owner, and title by prescription is only gained to the extent to which the rights of the lower riparian owner are interfered with.

[3] ID.—ADVERSE USER.—The use of water by an upper riparian owner is adverse to the rights of the lower riparian owner only when it constitutes such an interference with the rights of the lower owner as would justify an action to restrain such interference.

APPEAL from a judgment of the Superior Court of Modoc County.  Clarence A. Raker, Judge.  Reversed.

The facts are stated in the opinion of the court.

McCamant & Thompson for Appellant.

Daly B. Robnett for Respondents.

WILBUR, J.—The plaintiff owns land through which Cottonwood Creek flows. He brought this action to quiet his title to a portion of the waters of this stream. Defendants Charley C. Larkin and Ellen Larkin and defendant Isaac Robnett also own riparian land on Cottonwood Creek, above plaintiff's land. The defendants Dick own nonriparian land to which water has been diverted from Cottonwood Creek and Isaac Robnett also owns a tract of nonriparian land known as the "Home Place," to which water has been diverted. The action thus involves both riparian rights and the prescriptive rights of nonriparian owners in the waters of Cottonwood Creek. The creek is fed by mountain snows, and about April 1st carries over a thousand miner's inches of water. This flow gradually diminishes during the irrigating season, which lasts from April 1st to July 1st, and for gardens extends through the month of August, until there is a very small stream of water. The court awarded the defendants a continuous flow of 350 miner's inches of water as follows: To defendants Larkin, 80 inches; to defendant Robnett, 100 inches for his riparian land and 120 inches for his home place, and to defendant Dick, 50 inches, thus awarding 180 inches to riparian and 170 inches to nonriparian land, and then apportioned the remainder of the water, awarding the Larkins two-sevenths thereof for 158.54 acres; defendant Robnett, five-fourteenths for 160 acres, and plaintiff Oliver five-fourteenths upon his 221 acres, of the surplus over and above 350 miner's inches. The plaintiff contends that the evidence is insufficient to show a prescriptive right to the 350 miner's inches of water, not only because an uninterrupted user for the statutory period was not shown, but also because the amount allowed was unreasonably large. The amount allowed was approximately one miner's inch per acre per annum for each acre irrigated, whereas it is claimed that one-half miner's inch per acre per annum was amply sufficient, if reasonably used, to irrigate the lands which were in fact irrigated.

We have heretofore had occasion to advert to the excessive allowances of water by some of the decisions in the northern part of California. In *Northern California Power Co. v. Flood,* 186 Cal. 301, 304 [199 Pac. 315], it was said:

"The right to the use of waters of a stream may be acquired, as against others entitled thereto, by taking and

beneficially using the same adversely and continuously under a claim of right for a period of five years. But in such a case the right, with respect to the quantity of water therein, extends only to the quantity actually put to a beneficial use. The fact that one has a ditch running through his land which he keeps full of water diverted from a stream does not give him any right to such water against others who have rights therein. In order to gain a right to the water the diverter must actually use it and the quantity used measures the extent of his right. The use of all the water in the ditch, or a specific portion thereof, for only a part of the time, is not a sufficient use to give title to that quantity of water continuously. For example, if twenty acres of land requires irrigation once a month during the irrigating season and the entire flow of the ditch for two days is necessary to accomplish one irrigation, the fact that the claimant has used the water in that manner once a month during every irrigating season does not give him the right to the entire flow during the intervals of non-use. If others are using the water during such intervals of nonuse by him, his right would include only one-fifteenth of the full flow of the ditch. We emphasize this point because we have found that in recent cases the question of the duty of water seems to have received very little attention. From comparison with many other cases on the subject, we are disposed to doubt whether the use of a continuous flow of seventeen and a half miner's inches of water for each acre irrigated can ever be necessary, or can ever be otherwise than excessive and wasteful.''

[1] The water must not only be actually diverted and adversely used to give title by prescription, but such title extends only to so much of the water so used as is reasonably necessary for the purpose for which it is used. (*California etc. Co.* v. *Madera etc. Irr. Co.,* 167 Cal. 78 [138 Pac. 718].)

The briefs are largely devoted to a discussion of whether or not an uninterrupted and adverse use of water for the prescriptive period is shown by the evidence to the extent found by the trial court. We cannot consider the question of the weight of the evidence, and for that reason we might be compelled to the conclusion that the very general and very vague testimony of the defendants' witnesses to

the effect that the diverting ditches used by them were always running full, and that the water was actually and necessarily used, was sufficient evidence to support the findings of the trial court; notwithstanding more definite evidence as to the actual use and necessity therefor, contradicting such general and sweeping testimony, was offered by the plaintiff.

We need not determine that question because the judgment must be reversed for other reasons. In view of a new trial, however, it is proper to say that it is much more satisfactory to establish the amount of land irrigated from time to time, and to ascertain the amount of water reasonably necessary for the irrigation of that amount of land, and allow the adverse claimant such necessary amount, than it is to rely upon general statements concerning the amount of water kept flowing in ditches and used, where such water has not been measured nor economically used, and where, as here, there has been a large amount of waste water from time to time. For instance, in this case the court found eighty inches of water had been used on the Larkin place for more than forty years, while the evidence shows without dispute that up to 1893, not more than five or six acres of this land were irrigated, and up to 1898, not more than twenty acres were watered, all but five or six of which were covered with brush. In 1904 there were ten or twelve acres in alfalfa. In 1905 and 1906 fifty or sixty acres were cleared and sown to alfalfa, and yet it is found that eighty inches of water was beneficially used for forty years on this land; that is, that eighty inches of water, continuous flow, was necessary to irrigate, and was used for irrigating, less than six acres of land from 1881 to 1893. In this connection, however, it should be said that an adverse user for five years only is required to establish title by prescription and that the finding need only be supported by evidence of five years' continuous user, and that the defendants rely upon evidence of such user from 1910 to 1917. Our reference to the finding of forty years' adverse user is solely for the purpose of illustrating the unsatisfactory result of basing findings upon generalities, such as those testified to by the defendants' witnesses. It will be unnecessary for us to determine whether or not the evidence is sufficient to sustain the finding of adverse user for the

prescriptive period. The trial court evidently rendered its judgment on the theory that the use of water by an upper riparian owner was adverse to the lower riparian owner and that by the use of eighty miner's inches of water by the Larkins and one hundred inches of water on Robnett's upper riparian land, the owners of these lands had acquired by prescription the right to such water and that this prescriptive right was a right over and above and in addition to the riparian rights to the waters of the stream. This position is untenable. [2] An upper riparian owner who is using water from the stream is presumed to be doing so in the exercise of his right so to do, and consequently if he has openly, notoriously and continuously used a certain amount of water for the statutory period, this right to the extent that it is a mere exercise of the riparian right, has no effect on the riparian rights of the lower riparian owner, and title by prescription is only gained to the extent to which the rights of the lower riparian owner are interfered with. The rule on that subject is stated in *Peake* v. *Harris*, 48 Cal. App. 363, 381 [192 Pac. 310], in an opinion denying a transfer from the district court of appeal, as follows:

"It is also settled that the lower riparian owner, the plaintiff being such owner, cannot complain of the use by an upper riparian owner except by showing that the upper owner uses an unreasonable quantity of the stream, having regard to the needs of the lower owner, and, consequently, that the lower owner cannot enjoin the use by an upper owner unless he alleges such unreasonable use to his injury. (*Swift* v. *Goodrich*, 70 Cal. 105 [11 Pac. 561] ;. *Hargrave* v. *Cook*, 108 Cal. 77 [30 L. R. A. 390, 41 Pac. 18] ; *Heilbron* v. *Land etc. Co.*, 80 Cal. 193 [22 Pac. 62] ; *Anaheim W. Co.* v. *Semi-Tropic Co.*, 64 Cal. 192 [30 Pac. 623].) "

[3] The use of water by an upper riparian owner is adverse to the rights of the lower riparian owner only when it constitutes such an interference with the rights of the lower owner as would justify an action to restrain such interference. (2 Kinney on Irrigation and Water Rights, 2d ed., p. 1861, sec. 1040.) In so far as the use by the defendants, Larkins and Robnett, of eighty and one hundred miner's inches of water, respectively, was justified by their riparian ownership such use was not adverse to the plaintiff. The

riparian rights of Oliver in the waters of the stream should be ascertained without regard to the amount of water actually diverted by the defendants, Larkins and Robnett, on their riparian lands. The riparian rights of the plaintiff would be diminished by such use only to the extent that the diversions above his riparian lands were adverse to such riparian rights.

The judgment of the trial court was erroneous in that it gave Robnett and the Larkins the full amount of water used by them for more than five years on the theory that they had a prescriptive title thereto, and then prorated the excess over that amount and over the amount of the other diversions, as an additional right belonging to the Larkins and Robnett by reason of their lands being riparian to the stream. The right of the appropriators to 170 miner's inches of water, that is, of Dick to 50 miner's inches and of Robnett to 120 miner's inches for the home place, established by the decree, might be affirmed, and the rights of Oliver, Robnett and the Larkins alone left to be determined on a new trial, were it not for the fact that we are satisfied from an examination of the record that the whole case should be retried in the light of the legal principles laid down concerning riparian and nonriparian ownership, and the reasonable use of water, particularly as it appears that Robnett sometimes used the water diverted for his riparian lands on his nonriparian land.

Judgment reversed.

Shaw, C. J., Waste, J., Lennon, J., Lawlor, J., and Richards, J., *pro tem.*, concurred.