[Sac. No. 3895. In Bank.—August 29, 1927.]

L. P. SCOTT et al., Plaintiffs and Respondents; A. H. JENSEN et al., Interveners, v. FRUIT GROWERS SUPPLY COMPANY (a Corporation), Appellant.

[1] Waters and Water Rights — Action to Enjoin Diversion of Waters of Spring—Findings—Sufficiency of Evidence.—In this action to enjoin the diversion of the waters of a certain spring it is held that the evidence was sufficient to sustain a finding that the spring is tributary to a certain creek.

[2] Id. — Riparian Rights — Prescription — Return of Waters to Stream After Diversion.—The contention in such a case by defendant that it and its predecessors had openly, notoriously, and adversely used the waters of the spring in question for the irrigation of a ranch, and that they have acquired the riparian rights of plaintiffs by prescription, is not sustained, where the court finds, upon sufficient evidence, that the water of the spring always returned to the creek after about twenty-four hours of use for irrigation on the ranch of the defendants.

[3] Id.—Relative Rights of Riparian Owners.—A riparian proprietor on whose land a stream rises has no more right than any other riparian proprietor.

[4] Id. — Use of Waters as Riparian Proprietor — Presumption.— The presumption is that in the use of water an upper riparian proprietor is exercising his riparian rights, and no title by prescription can be given unless it is brought home to the lower

---

2. Prescriptive title to water, note, 93 Am. St. Rep. 711. See, also, 27 R. C. L. 1690.

4. See 25 Cal. Jur. 1165.

riparian proprietors that the upper riparian proprietor asserts a right other than his riparian right.

[5] ID.—PRESCRIPTIVE RIGHT—USE OF WATERS ON OTHER LAND.—Even though a party has acquired a prescriptive right to irrigate certain lands with the entire flow of certain waters, it has not an incidental right to use the waters on lands other than those for which the prescriptive right was acquired, where such diversion results in injury to others.

[6] ID.—LIMIT OF PRESCRIPTIVE RIGHTS.—Prescriptive rights are *stricti juris* and should not be extended beyond the actual user.

[7] ID.—BENEFICIAL USE—WATER COMMISSION ACT.—The contention that such action was barred by the provisions of the Water Commission Act, section 11 as amended May 11, 1919 (Stats. 1919, p. 513), providing that if waters are not put to a beneficial purpose upon riparian lands for a continuous period of ten consecutive years after the passage of the act, it will be conclusively presumed that they are not needed upon said riparian lands for a beneficial purpose, cannot be maintained, where the court found that within from twenty-four to forty-eight hours after the diversion of the waters of the spring for use upon a ranch they returned to the stream and through its natural course to the lands of plaintiffs, upon which they had been used for many years for irrigation and domestic purposes.

[8] ID.—DOCTRINE OF BALANCE OF CONVENIENCE—RIPARIAN RIGHTS.—The contention in such a case for a doctrine designated "balance of convenience," under which defendant urges that as its needs are very great for the water in question and its investment very large, those circumstances should weigh against the plaintiffs' rights, which have reference only to small pieces of land of comparatively little value, has no place in the law governing riparian rights.

[9] ID.—APPROPRIATION OF WATER—CHANGE OF POINT OF DIVERSION.—An appropriator of water may not change the point of diversion to the injury of others.

[10] ID.—APPROPRIATION—NATURE OF RIGHT.—Under the appropriation doctrine one acquires only the use of water and not the ownership in the *corpus* thereof.

7. See 25 Cal. Jur. 1155.

8. Change in place of diversion of water, note, 60 Am. St. Rep. 813. See, also, 26 Cal. Jur. 101; 27 R. C. L. 1279.

9. See 25 Cal. Jur. 1065, 1152; 26 Cal. Jur. 49.

10. See 27 R. C. L. 1134.

[11] Id. — Remedies — Injunction — Damages.—Riparian proprietors may restrain the taking of water to nonriparian land without showing damages.

---

(1) 40 Cyc., p. 633, n. 68.  (2) 40 Cyc., p. 701, n. 82.  (3) 40 Cyc., p. 629, n. 45.  (4) 40 Cyc., p. 697, n. 52.  (5) 40 Cyc., p. 700, n. 78.  (6) 40 Cyc., p. 700, n. 77.  (7) 40 Cyc., p. 727, n. 64.  (8) 40 Cyc., p. 738, n. 77.  (9) 40 Cyc., p. 629, n. 45.  (10) 40 Cyc., p. 709, n. 38.  (11) 40 Cyc., p. 738, n. 72.

APPEAL from a judgment of the Superior Court of Lassen County.  H. D. Burroughs, Judge.  Affirmed.

The facts are stated in the opinion of the court.

J. E. Pardee, Farrand & Slosson and Dozier, Kimball & Dozier for Appellant.

N. J. Barry and Hardin Barry for Respondents.

LANGDON, J.—This is an appeal from a judgment of the superior court of Lassen County, which enjoins defendant and appellant from conducting the water of Bagwell Springs through a pipe-line constructed by appellant in 1924 from Bagwell Springs to its mill-pond on the south bank of the Susan River, in Lassen County, California.  The geographical and topographical conditions involved in the controversy are best illustrated with a map and chart, but the findings of the trial court have described such conditions substantially as follows:

Susan River comes out of the mountains to the west of the town of Susanville and flows in an almost straight easterly direction.  A short distance after the river comes out of the mountains it is joined on the north side by a tributary called Piute Creek.  Piute Creek flows in a southeasterly direction and joins Susan River at an acute angle.  Between the point where Piute Creek comes out of the mountains and where it flows into Susan River there are certain ranches. The ranch closest to the mountains is the Cain Ranch, owned by the appellant, and Piute Creek flows across this ranch. Next below is the Long Ranch, also owned by appellant, and Piute Creek flows across this ranch.  Next below the Long Ranch are the lands of the plaintiffs Gehrig, Scott, Taylor, and Accomasso.  Piute Creek flows across all the

202 Cal.—4

lands of these last-named plaintiffs.   The lands of the plain-
tiff Boggs are on the north of and border on Susan River
just below the point where Piute Creek flows into Susan
River.   The Boggs lands have always been irrigated from
the waters of Piute Creek by a ditch connected with Piute
Creek before it reaches Susan River.   On the south side of
Susan River, a little below the point where Piute Creek
flows into Susan River, are the lands of the defendant upon
which its mill and mill-pond are situated.   The lands of the
interveners lie below all the lands of plaintiffs and defend-
ant, along Susan River.   The Cain Ranch, the Long Ranch,
and the ranches of plaintiffs, except plaintiff Boggs, are
riparian to Piute Creek and for many years have been irri-
gated by the water of said creek.   The Long Ranch lies in
a basin, most of it north of Piute Creek.   Near the northern
boundary of the Long Ranch there is a spring of water
known as the Bagwell Spring, which flows sixty-eight inches
of water in all seasons of the year.   This spring is con-
siderably higher than Piute Creek and the waters thereof
flow in an almost southerly direction in a well-defined chan-
nel between well-defined banks and into Piute Creek, and
this spring is therefore tributary to Piute Creek.   None of
the waters of Bagwell Springs ever have or can reach the
Cain Ranch, which is entirely dependent for water upon
Piute Creek proper before the confluence of Bagwell Springs
branch with Piute Creek.   After the first of July of each
year, the waters of Bagwell Springs constitute practically
all the waters of Piute Creek, the waters of Piute Creek
above that point being used on the Cain Ranch.

Up to the month of July, 1924, the waters of Bagwell
Springs were used for the irrigation of the Long Ranch and
the ranches of the plaintiffs, and what was left over went
into Susan River and went down to the interveners.   The
Long Ranch and the plaintiffs' ranches were settled about
1860.   The Longs connected the first ditch with the Bagwell
Springs branch.   After the waters were taken out by the
Longs and applied to the land there would be a space of
from twenty-four to forty-eight hours when the plaintiffs
would get no water.   Sometime during that time, how-
ever, the waters of the spring branch, after irrigating the
Long Ranch, would of their own accord return to the stream
and thence flow down Piute Creek, and Piute Creek, where

it flowed over the lands of the plaintiffs, would have the usual amount of water, and during all of those years the plaintiffs have used the waters of Piute Creek for raising orchards and gardens and for domestic purposes. This condition continued until the month of July, 1924. Appellant's mill-pond is on the south side of Susan River, almost opposite the confluence of Piute Creek with Susan River. There is a ditch leading from Susan River into the mill-pond. This ditch comes out of Susan River above the point where Piute Creek flows into Susan River. It does not appear that the mill-pond of defendant ever had a drop of water from Piute Creek prior to July, 1924. At that date the defendant and appellant, by means of a cement dam and pipe-line, conveyed the water directly from Bagwell Springs to its mill-pond on the south side of Susan River. This pipe-line runs to the east of all the lands of plaintiffs outside the watershed and never a drop of this water can return to Piute Creek or to the lands of plaintiffs. This action was brought to enjoin this diversion.

[1] The record presents the initial question: Is Bagwell Springs a tributary of Piute Creek? The argument presented by respondents is predicated upon the theory that it is such a tributary, and the appellant challenges that position, and the finding of the trial court in consonance therewith. The finding of the court with reference to the matter is ''that there is a certain tributary of said Piute creek which arises in the south half of Section 19, Township 30 N., Range 12 East, being what is known as and called Bagwell springs, the water of which stream flows in a general southeasterly direction in a well defined channel between well defined banks into said Piute creek at a point above all of the lands of plaintiffs and above the points of diversion of all the plaintiffs from time immemorial has so flowed.'' This finding is supported by the testimony of the witnesses Long, Whalen, Jensen, Jenkins, Brockman, and several others, and it is idle for appellant to attack it because some conflict appears in the evidence offered at the trial.

The next question presented is as to whether the appellant may divert the waters from this tributary of Piute Creek outside the watershed and into its mill-pond so as to deprive plaintiffs of their riparian rights in Piute Creek.

**[2]** Appellant claims that it and its predecessors have openly, notoriously, and adversely used the water of Bagwell Springs for the irrigation of the Long Ranch, and that they have acquired the riparian rights of plaintiffs by prescription. The finding above quoted to the effect that the water of the springs would always return to the creek after about twenty-four hours of use for irrigation on the Long Ranch, and the testimony appearing in the record supporting such finding completely answer the position of appellant upon this question.

The attack upon the findings regarding the diversion of all the water of Bagwell Springs by appellant by means of its pipe-line, and the carrying of the same outside the watershed is answered by the pleadings, the appellant admitting such diversion of all the waters of said springs to its mill-pond, but contending merely that such waters were not tributary to Piute Creek.

Two theories are advanced by appellant for a reversal of this judgment. The contention is made that as an upper riparian proprietor, it was entitled to divert the waters from the riparian land to the mill-pond. This position is clearly untenable. **[3]** "A riparian proprietor on whose land a stream rises has no more right than other riparian proprietors." (Wiell on Water Rights, sec. 294, p. 453; *Geddis* v. *Parrish*, 1 Wash. 587 [21 Pac. 314]; *Nelson* v. *Sponer*, 46 Wash. 14 [89 Pac. 155].) The other contention is that a right to the water of the spring has been acquired by appellant by prescription. This contention is answered by the evidence referred to herein and by the findings of the court based thereon to the effect that the appellant, in irrigating the Long Ranch, merely diminished the waters of Piute Creek for a period of from twenty-four to forty-eight hours, and thereafter the water returned to the creek for the use and benefit of the lower riparian owners. **[4]** The presumption is that in the use of water an upper riparian proprietor is exercising his riparian rights, and no title by prescription can be given, unless it is brought home to the lower riparian proprietors that the upper riparian proprietor asserts a right other than his riparian right. (*Oliver* v. *Robnett*, 190 Cal. 51 [210 Pac. 408]; *Peake* v. *Harris*, 48 Cal. App. 363 [192 Pac. 310]; *Pabst* v. *Finmand*, 190 Cal. 124 [211 Pac. 11].) **[5]** It is also true that even though the

appellant had acquired a prescriptive right to irrigate the Long Ranch with the entire flow of Bagwell Springs, it would not have an incidental right to use the water on land other than that for which the prescriptive right was acquired (*Southern California etc. Co.* v. *Wilshire,* 144 Cal. 69 [77 Pac. 767]), where such diversion resulted in injury to others. (Civ. Code, sec. 1412.) **[6]** Prescriptive rights are *stricti juris* and should not be extended beyond the actual user. (*North Fork Water Co.* v. *Edwards,* 121 Cal. 662 [54 Pac. 69].) Since the prescriptive right is limited by the extent of the use which conferred the title, the place of use cannot be changed, where to do so would interfere with the rights of others. (*Southern California Inv. Co.* v. *Wilshire,* 144 Cal. 68 [77 Pac. 767].) In *Hargrave* v. *Cook,* 108 Cal. 80 [30 L. R. A. 390, 41 Pac. 18], it was said: "Upon the question of the right of the owners of the Hargrave & Comfort ditch to extend it five or six hundred feet over the northwest quarter of section 20, now the land of Cook, the better to facilitate the obtaining of their water, we do not deem it proper, upon this appeal, to do more than point out that, while an appropriator of water upon governmental land retains his rights when the land passes into private ownership, by virtue of the confirmatory statutes of the United States . . . and, while in the exercise of these rights he may change the point of diversion to another place upon the servient tenement, he is nevertheless limited in so doing to the exigencies of the situation, and has no right to make such change arbitrarily and at will. He may do so when under certain circumstances it is required to enable him to take the amount of water to which he has ownership, but then only when 'others are not injured by the change.' (Civ. Code, sec. 1412.) His rights are the rights of the grantee of an easement, and extend in the matter of changing the point of diversion, no further than the boundaries of the servient tenement, and even when entering upon this he is under obligation only to make reasonable changes with reasonable care, and also to repair, so far as possible, whatever damage his labors may have occasioned (Gale and Whately on Easements, 235); as to lands other than those subject to his easement, and as to other claimants and owners, he can make no change at all which injuriously affects them or their rights."

[7]  It is contended by appellant that error was committed by the trial court in holding that plaintiffs' action was not barred by the provisions of the Water Commission Act of the state of California. The portion of said act relied upon is the following portion of section 11 thereof as amended May 11, 1919 (Stats. 1919, p. 513): "If any portion of the waters of any stream shall not be put to a useful and beneficial purpose to or upon lands riparian to such stream for any continuous period of ten consecutive years after the passage of this act, such non-application shall be deemed to be conclusive presumption that the use of such portions of the waters of such stream is not needed upon said riparian lands for any useful or beneficial purpose." Since the trial court found that within from twenty-four to forty-eight hours after the diverison of the water of the springs for use upon the Long Ranch, said waters returned to the stream "and thus went on down Piute Creek on said Long ranch and thence through its natural course through the lands of the plaintiffs, and plaintiffs and their predecessors in interest have ever since about the same time, to-wit, the year 1863, diverted and used the waters of said stream upon their said lands for the irrigation thereof and for domestic purposes," the above-quoted provision of the so-called Water Commission Act becomes immaterial.

[8]  Appellant contends for a doctrine which has been designated "the balance of convenience," and urges that as its needs are very great for this water and its investment very large, those circumstances should weigh against the plaintiffs' rights, which have reference only to small pieces of land of comparatively little value. Such argument has no place in the law governing riparian rights. It was rejected in the case of *Miller & Lux* v. *Madera etc. Co.*, 155 Cal. 59 [99 Pac. 502], wherein it was said: "The argument that these waters are of great value for the purpose of storage by appropriators and of small value to the lower riparian owners defeats itself. If the right sought to be taken be of small worth, the burden of paying for it will not be great. If, on the other hand, great benefits are conferred upon the riparian lands by the flow, there is all the more reason why these advantages should not without compensation be taken from the owners of these lands and transferred to others."

[9] Appellant also claims to be an appropriator of all the water of the springs. Apart from the fact that the appropriation, if such there was, was not made upon government land (*Cave* v. *Taylor*, 133 Cal. 566 [65 Pac. 1089]; *Holmes* v. *Nay*, 186 Cal. 231 [199 Pac. 325]; *San Joaquin etc. Co.* v. *Worswick*, 187 Cal. 674 [203 Pac. 999]), it is not the purpose of this action and it is not the effect of this judgment to deprive defendant and appellant of the use of the waters of the springs for irrigation of the Long Ranch, but merely to enjoin it from diverting the waters from the watershed, and it is settled that even an appropriator of water may not change the point of diversion to the injury of others. (*Kidd* v. *Laird*, 15 Cal. 163 [76 Am. Dec. 472]; *Butte T. M. Co.* v. *Morgan*, 19 Cal. 609; *Ramelli* v. *Irish*, 96 Cal. 214 [31 Pac. 41]; *Hargrave* v. *Cook*, 108 Cal. 72 [30 L. R. A. 390, 41 Pac. 18].) [10] Furthermore, under the appropriation doctrine, one acquires only the use of the water and not the ownership in the *corpus* thereof. (*Ortman* v. *Dixon*, 13 Cal. 34; *McDonald* v. *Askew*, 29 Cal. 201; *Nevada County & Sacramento Coal Co.* v. *Kidd*, 37 Cal. 282; *Shenandoah Mining & M. Co.* v. *Morgan*, 106 Cal. 409 [39 Pac. 802].) The water flowing off the Long Ranch after twenty-four hours' use was therefore subject to appropriation by lower proprietors and they used it to irrigate their lands, as shown by the testimony and findings.

[11] The only remaining point to be considered is the contention of appellant that injunction was not the proper remedy; that damages only should have been allowed, if any relief was granted to the plaintiffs, and that plaintiffs have not shown damage. The trial court found the plaintiffs had been substantially damaged by the diversion, and this finding is supported by testimony set out in respondents' brief and copied from the record. However, riparian proprietors may restrain the taking of water to nonriparian land without showing damage. (*Fresno Canal etc. Co.* v. *People's Ditch Co.*, 174 Cal. 446 [163 Pac. 497].)

There are no other matters requiring discussion, and the judgment is affirmed.

Preston, J., Richards, J., Shenk, J., Seawell, J., and Waste, C. J., concurred.