[Sac. No. 1781. In Bank.—February 1, 1912.]

# LOUIS F. HUFFORD, Respondent, v. JAMES N. DYE, Appellant.

WATER-RIGHT—APPROPRIATION—DEED OF HALF INTEREST IN IRRIGATION DITCH—TENANTS IN COMMON—FAILURE TO USE WATER CLAIMED UNDER APPROPRIATION.—In an action involving the ownership and right to the use of the waters of an irrigation ditch, to an undivided one half of which the defendant asserted a claim as a tenant in common, as the successor in interest under a deed from the original appropriator conveying "an undivided half of the ditch, and a right of way over the grantor's land, with the appurtenances," it is held, in view of the fact that such appropriator at the time of the deed was only making a beneficial use of one half of the waters then actually carried by the ditch, that such deed did not create a tenancy in common in the waters of which a beneficial use was then being made, but that if it conveyed anything more than an interest in the ditch itself as then constructed, with a right of way to extend it over the grantor's land, it was only a right to take by means of the ditch the one half of the waters which the grantor was in fact conveying in the ditch but to which under his appropriation he was not entitled because in excess of any beneficial use upon his land, and so to afford the grantee an opportunity to avail himself of a right to such excess, and by applying it to beneficial uses upon his land, acquire a right thereto by appropriation.

ID.—WASTE WATER SUBJECT TO SUBSEQUENT APPROPRIATION.—One making an appropriation of the waters of a stream acquires no title to the waters but only a right to their beneficial use and only to the extent that they are employed for that purpose. His right is not measured by the extent of his appropriation as stated in his notice or by his actual diversion from the stream, but by the extent to which he applies such waters for useful or beneficial purposes. Beyond that his appropriation or diversion of more than can be applied by him gives him no right to the excess and this is subject to appropriation by any other person who may use it for similar beneficial purposes.

ID.—APPROPRIATOR CANNOT ALLOW WATER TO RUN TO WASTE.—The use of water in this state is of such great necessity as to preclude its being allowed to run to waste, and its full beneficial and economical use requires that when the wants of a prior appropriator are supplied another may be permitted to use the flow of the surplus for his benefit.

ID.—USE OF WATERS FOR OCCASIONAL PERIODS—SUBSEQUENT APPROPRIATION FOR PERIODS WHEN PRIOR APPROPRIATOR MADE NO USE.—

As the evidence in this case shows that neither the plaintiff nor his predecessors have used the waters of the stream in question, under their prior appropriation, except for occasional periods during the irrigation season, the finding that all of such waters have been appropriated by them and have been and are applied to a continuous beneficial use on land now owned by plaintiff, is not sustained by the evidence, and this being true the defendant had a right to make an appropriation of these waters for use upon his land at such times as the plaintiff had no use for them.

ID.—INJUNCTION AGAINST USE OF WASTE WATERS.—A prior appropriator is not entitled to enjoin the taking of waters by one claiming a right to the beneficial use of a portion thereof, if such taking was during a period when, while assuming to appropriate them, the prior appropriator really allowed them to run to waste or failed to apply them to a beneficial use.

ID.—TENANCY IN COMMON OF IRRIGATION DITCH—USE BY COTENANT IN POSSESSION—OUSTER AND ADVERSE POSSESSION.—A cotenant in possession of an irrigation ditch has a right to use it for the purpose of conveying waters for use upon his land to the extent that he was entitled to their beneficial use, as long as the other cotenant made no use of the ditch, and such use did not amount to an ouster or adverse holding.

ID.—DECREE DETERMINING RELATIVE RIGHTS OF APPROPRIATORS—ROTATION IN USE OF WATERS.—In a controversy between appropriators of the waters of a stream, the volume of which is not sufficient to permit of a diversion and a simultaneous use of part by both parties without injury, the court may by its decree fix the times when, by rotation, the whole may be used by each at different times in proportion to their respective rights. While this remedy of rotation has been more generally applied as between riparian proprietors, it is equally applicable as between claimants by appropriation.

APPEAL from a judgment of the Superior Court of Shasta County and from an order refusing a new trial. Charles M. Head, Judge.

The facts are stated in the opinion of the court.

W. D. Tillotson, for Appellant.

F. P. Primm, and James E. Isaacs, for Respondent.

LORIGAN, J.—This action involves the ownership and right to the use of the waters of an irrigation ditch commonly known as the "Preadmore" or "Hufford" ditch, taking waters from Oak Run Creek in Shasta County.

The ditch was constructed and the waters appropriated in the 1870's by one James A. Preadmore. His appropriation notice was for two thousand inches under a four-inch head. The ditch had its head in Oak Run Creek, on what is designated in the evidence as the "Alpaugh Place," and prolonged in a westerly direction runs across said Alpaugh land about a quarter of a mile, then about half a mile over the land now owned by defendant, and thence about half a mile over the land now owned by plaintiff which was then part of the property owned by said Preadmore. After the construction of the ditch and the appropriation of the water thereby, Preadmore in 1873 conveyed to one George W. Brown the lower westerly eighty acres of the main tract of land then owned by him and over which the ditch had been constructed, together with "one undivided half of the Oak Run ditch property; also right of way over J. Preadmore farm, together with the appurtenances," which land and interest in said ditch was subsequently through mesne conveyance from Brown conveyed in the year 1888 to one Alfred Estep, who remained the owner thereof until January, 1906. When the conveyance from Preadmore to Brown was made the ditch did not run down to the lower eighty-acre tract conveyed to the latter though it ran close to its easterly line. Neither Brown nor his successors in interest, including Estep, ever had the ditch brought upon the land conveyed by Preadmore to Brown, or used the water therefrom, but such water as passed down the ditch as constructed on the land retained by Preadmore flowed down in natural channels—sloughs—upon and through the land so conveyed to Brown and thence back into Oak Run Creek. It was never, however, even in its flow through its natural channels upon the Estep land used upon the land for any beneficial purpose or at all.

Subsequent to the death of James A. Preadmore one Solomon Hufford, in 1883, acquired title from the heirs of Preadmore to a portion of the "Preadmore land," together with the water ditch and water-right connected therewith, and on the death of Solomon Hufford through mesne conveyances from his successors in interest, the plaintiff in 1907 acquired title to the land now owned by him, including their interest in said water ditch and said water-right appurtenant thereto.

In October, 1905, the defendant Dye purchased from one Jones the tract of land above and adjoining the land of respondent and on the east thereof, being the tract across which James A. Preadmore constructed the ditch in the 70's, to convey the water of the creek to his land. While the ditch was originally constructed through this tract subsequently purchased by defendant, it does not appear that the predecessors in title of defendant at any time had any interest whatever in the ditch or right to the use of any of the water thereof, on this tract of land. In fact it appears that when this ditch was constructed the title to the land now owned by defendant was in the government.

The next year subsequent to his purchase of the land from Jones, the defendant on February 2, 1906, purchased from Alfred Estep whatever interest in the ditch and right of way over the Preadmore farm had been conveyed by Preadmore to Brown and to which interest Estep had succeeded. The defendant did not purchase any of the land which was conveyed by Preadmore to Brown and thereafter to Estep, but only whatever interest in the ditch and right of way over the Preadmore farm that Preadmore had conveyed.

On securing such conveyance from Estep, defendant asserting thereunder that he was entitled to the undivided half of said ditch and the waters flowing therein, opened the ditch where it crossed his land above the Preadmore tract owned by plaintiff and commenced to use upon it one half of the waters flowing therein.

On September 26, 1908, plaintiff brought this action against defendant, alleging ownership in himself and his predecessors in interest for more than thirty years past and a continuous possession and use during that period of the first flow of all the waters of Oak Run Creek not exceeding two thousand inches measured under a four-inch pressure conducted to the lands of the plaintiff through a ditch which diverted the same from said creek and conveyed the same down and over plaintiff's land consisting of two hundred and eighty acres upon which all of said waters are necessary for use in cultivating and raising crops upon said land and are used by plaintiff for that purpose; alleged diversion of the waters from the ditch by defendant and a threatened continuance of such diversion, and facts showing that irreparable injury

would result to plaintiff if such diversion by defendant were permitted to continue. The prayer was for a perpetual injunction restraining defendant from interfering with or taking waters from the ditch; that the title of plaintiff be quieted and for damages alleged to have been sustained by the diversion made by defendant.

In his answer defendant denied ownership or continuous use by plaintiff of all the waters of Oak Run Creek, or that all of said waters were necessary for use or were used on the lands of plaintiff for the irrigation and cultivation thereof; asserted ownership in himself of an undivided one-half interest in all the water flowing in Oak Run Creek at the head of said ditch and a like interest in said ditch and the waters conveyed therein; admitted his diversion of water as charged in the complaint, justifying it under his claim to an interest therein as asserted, and denied any damages sustained by plaintiff.

By cross-complaint defendant set up his same claim of ownership to an undivided one-half interest in the ditch and water-right (which plaintiff by answer denied) and asked that his title thereto be established and quieted.

Judgment went for plaintiff sustaining his claim of ownership to the entire ditch and water-right, and awarded him a perpetual injunction against defendant and damages.

Defendant appeals from the jugment and the order denying his motion for a new trial, his principal attack on this appeal being against certain findings of the court.

The court found that for more than twenty years prior to the bringing of the action plaintiff and his predecessors in interest had been and were the owners and in the continuous use of said irrigating ditch taking the water from Oak Run Creek and to all the water flowing therein to the full extent and capacity of said ditch; that the whole of said waters diverted by said ditch were necessary for the proper irrigation of land of plaintiff and that during such period said waters of said ditch had been all used by plaintiff and his predecessors in interest on said lands now owned by plaintiff for irrigation and domestic purposes.

The court likewise found that the plaintiff and his predecessors for upwards of twenty years had been in the open, notorious, and exclusive possession under a claim of right to

the whole ditch and all the waters flowing therein to its full capacity; that they had made all repairs on the ditch and paid all taxes assessed against the ditch or water-right, and claimed during that entire period the right to the use, possession, and enjoyment of said ditch and all waters flowing therein adversely to the whole world.

It is quite obvious under the pleadings and the evidence that the finding of the court first referred to is a finding of ownership or right to the entire flow of the waters through the ditch by virtue of the appropriation of the waters of Oak Run Creek by Preadmore, and the continuous beneficial use of that entire quantity upon the lands by Preadmore himself or his successors in interest, including plaintiff. The other finding is of a prescriptive title acquired by plaintiff against the asserted claim of defendant to an interest in one half of the ditch and waters as tenant in common with plaintiff under the conveyance to defendant by Estep.

Appellant attacks both these findings on the ground that they are not sustained by the evidence, his main attack, however, being directed to the finding of prescriptive title against him acquired by plaintiff and his predecessors.

As against this finding of prescriptive title the position of appellant, in point of law, is that the conveyance from Preadmore to Brown in 1873 of "one undivided half of the Oak Run ditch property; also a right of way over J. Preadmore farm, together with the appurtenances" had the effect of creating a cotenancy between Preadmore and Brown in the ditch and the waters flowing therein; that through mesne conveyances from Brown defendant succeeded to this half interest as tenant in common with the successors in interest of Preadmore, including plaintiff, and that unless a prescriptive title to the entire ditch and the waters conveyed therein is shown to have been acquired against Brown and Estep, predecessors in cotenancy with defendant, by the plaintiff or his predecessors in title, defendant still retains and is entitled to the benefit of that interest. Appellant, assuming this to be true as a legal proposition, then claims that the finding of prescriptive title, defeating his title as such tenant in common, is not sustained by the evidence because he asserts that there was no proof of ouster by the plaintiff or his predecessors as tenant in common of defendant

or his predecessors and no evidence of adverse use by the plaintiff of all the waters of the ditch for the statutory period required, or of any use exceeding one half of the waters flowing in the ditch at any time.

We do not discuss just now, if we shall at all, the sufficiency of the evidence under this claim, because we are satisfied that no tenancy in common to the use of the waters in controversy was created or intended to be created by the conveyance from Preadmore to Brown. Undoubtedly, the conveyance created a tenancy in common between them as to the ditch with a right in Brown to extend it on to the property conveyed to him—and it may be assumed, though the conveyance does not so specifically state, that the right was granted to Brown to convey through the ditch for use upon his land, one half of the waters which had been diverted by Preadmore under his claim as an appropriator to two thousand inches of the water of Oak Run Creek. But when we take into consideration the terms of the conveyance, the situation and relation of the parties to the subject-matter with which it dealt, and the law defining the only rights which either Preadmore or Brown could acquire in appropriated waters, and the conduct of the parties subsequent to the conveyance, it is quite apparent that the only right and the extent of it, aside from an undivided interest in the ditch itself that Brown took under the conveyance, was the right through the medium of the ditch extended by him on to his land to avail himself of the benefit of Preadmore's appropriation beyond what was necessary for use on the lands of the latter and to allow Brown as a subsequent appropriator to acquire a right to this excess by conveying it to and making beneficial use of it upon his land.

It is the well-settled law of this state that one making an appropriation of the waters of a stream acquires no title to the waters but only a right to their beneficial use and only to the extent that they are employed for that purpose. His right is not measured by the extent of his appropriation as stated in his notice or by his actual diversion from the stream, but by the extent to which he applies such waters for useful or beneficial purposes. Beyond that his appropriation or diversion of more than can be applied by him gives him no right to the excess and this is subject to appropriation by

any other person who may use it for similar beneficial purposes. While Preadmore had filed a notice appropriating two thousand inches of water, his ditch as actually constructed did not carry that quantity but it did carry a quantity, when the deed to Brown was made, in excess by one half, of what was being used for beneficial purposes upon his land, and this excess was at the time he sold the eighty acres to Brown flowing from the ditch in natural channels through the land conveyed to Brown back into Oak Run Creek. In fact, the claim of appellant is that, under the evidence, it is shown that one half of these waters have been ever since, and still are, flowing down these same channels as natural waste into said creek. As these waters when Brown purchased his land were not being devoted by Preadmore to any beneficial use, they were subject to appropriation for use by Brown upon his land without any conveyance from Preadmore. This doubtless explains why, while an undivided half of the ditch was conveyed, there was no specific mention of the water-right, probably accounted for by the fact that these waste waters could only practically and effectually be brought upon the lands conveyed to Brown through the extension of the ditch thereover. Be that as it may, however, we are satisfied that under the conveyance to Brown, if it embraced anything more than an interest in the ditch itself as then constructed and a right of way to extend it to his land, it was only a right to take by means of the ditch one half of the waters which Preadmore was in fact conveying in the ditch but to which under his attempted appropriation he was not entitled because in excess of any beneficial use upon his land and so afford Brown an opportunity to avail himself of a right to such excess and by applying it to beneficial uses upon his land, acquire a right thereto by appropriation. This, neither he nor his successors in title ever did. For thirty years they failed to make any beneficial use of these waters. Whatever right they may have had to avail themselves of the benefit of the actual diversion by Preadmore in excess of his wants and acquire a right as subsequent appropriators to such excess they never availed themselves of it and have long since lost any right to do so. (*Smith* v. *Hawkins,* 110 Cal. 122, 127, [42 Pac. 453].) They have permitted the water to go back into the creek where, if not since appropriated by

other persons below, they have, at least, for years, been subject thereto, and now appellant insists that a tenancy in common was created by the deed to Brown which entitled him as his successor to enter on the ditch above the lands of plaintiff and take one half of the waters which plaintiff and his predecessors have ever since the appropriation by Preadmore been applying to beneficial uses upon their lands and which is now necessary for use thereon and which measured the extent to which they are entitled to them. The conveyance we are satisfied, was not intended to and did not vest any interest in cotenancy or otherwise of a right in Brown to the use of any waters which plaintiff or his predecessors were beneficially using on their lands. It simply conferred upon Brown and his successors an interest in the ditch whereby under Preadmore's actual diversion and by means of the ditch and dam they might themselves become appropriators by actual use of the excess of water beyond what was applied by Preadmore for beneficial purposes.

So that as there never existed any cotenancy in the use of these waters the finding of prescriptive right acquired by respondent against the asserted right of appellant is clearly of no moment.

In reality the material finding in the case is that respondent and his predecessors in interest are entitled to the waters flowing in said ditch by virtue of the appropriation thereof by Preadmore and a continuous necessary and beneficial use of the whole thereof ever since upon the lands now owned by respondent. It was upon this claim, denied by appellant, that respondent based his right to an injunction, and it is the finding in favor of such claim, as well as the finding of a prescriptive right, which appellant attacks, as not sustained by the evidence.

As we have said, the only right which Preadmore acquired as an appropriator of the waters of Oak Run Creek diverted through the ditch, was a flow of such quantity to his land as was necessary for use and which he applied for beneficial purposes thereon. If he or his successors were in fact diverting from the stream a quantity in excess of what was so being beneficially used on their land, they acquired no right to that excess, and any other person had a right to divert from the stream, as an appropriator, such excess beyond what

respondent or his predecessors were entitled to through actual use, regard, of course, being had of the rights of respondent as a prior appropriator to the first flow of the stream under such circumstances as would give him full protection to his prior acquired claim.

When this case was before the district court of appeal for the third district, in affirming the judgment, consideration was given only to the evidence in support of the finding of a prescriptive right against the asserted interest of appellant as cotenant of respondent. No consideration was given to the finding sustaining the claim of respondent as an appropriator, and which appellant also attacked. While, for the reasons heretofore given, we do not think the finding as to prescriptive right is material except as involving the ditch itself to which, as successor in interest to Brown appellant certainly became a tenant in common by record title with respondent and his predecessors, still, as in all material respects the same evidence was introduced to sustain both the claim of prescriptive right and a right by appropriation to the use of all the waters, both findings may be considered together and in our opinion the evidence sustains neither. This we think is apparent from a consideration of the testimony of the respondent himself and the witnesses called in his behalf.

All these testified respecting the use of the water by respondent, or his predecessors. The testimony covered a period of some thirty years, dating from about the time Solomon Hufford acquired the Preadmore land in 1883. Plaintiff was a nephew of Solomon Hufford and after the death of his uncle was in possession of this land as tenant, and also as an employee, during the years 1893, 1894, and 1895, purchasing it in 1907. His purchase was of 280 acres, but the ditch was only tributary to and there was susceptible of irrigation therefrom some sixty-five to seventy acres of which not more than thirty-five acres, consisting principally of meadow and orchard, were ever actually irrigated, the season therefor covering generally the months from July to October of each year.

Now, as to the testimony. Respondent himself, after testifying that he had known the ditch for about twenty-three years, proceeded: "It will be three years next May (the witness was testifying in February, 1909) since I first went on the place. Have used the water during all that time in the summer time,

except when Mr. Dye (defendant) had it. . . . I used it for irrigating my meadow, orchard, grain, hay ground and garden. I have about thirty acres of meadow, if not irrigated, it would dry up. It dried up last year after I cut my hay, and it did not make a second crop. It dried up because it did not get any water. It was turned out of the ditch by Mr. Dye. He turned it out fifteen or twenty times, I guess. He cut the banks of the ditch and threw some rocks in it and let it run out. . . . I forbid Mr. Dye to take water from the ditch a year ago last summer. . . . I don't think he turned the water out that season after that time. . . . Sometimes I used all of it, sometimes about a fourth. It was necessary sometimes that I use all of it. The water ought to be put on them (the orchard) twice a week. I think Mr. Estep used the waters in 1905 or Mr. Howell, I don't know which. I don't know what they did with it or how much they used. I saw the water running in the ditch. I don't know how much Mr. Howell used of the water in 1906. I think the water was used in this ranch every year, but I don't say that all of it was used there every year."

Howell, the person referred to in the testimony of respondent, testified that he owned the land subsequently purchased by plaintiff for a short time and was in possession from October, 1905, to October, 1906. He testified that he used the water from the ditch in the irrigation of the land while he owned it and to the inquiry: "Did you use all this water?" answered "Well, whenever I needed it. A man don't need it steady on his land. Irrigate your land and take the water off and and let it grow and warm up and then if it needs it put it on again. I didn't irrigate the orchard oftener than every two or three weeks. I used the water to irrigate the meadow or hay land every two or three weeks. When I did not use the water it went down through the old channel (the natural channel on the Estep Ranch) into the creek. I used the water one half the time during the summer of 1906 up to haying. After that I did not need it. Up to that time I used it about once in two weeks. I would irrigate for about a week and then let it rest for ten days or two weeks."

Alfred Estep, owner of the Estep Ranch heretofore referred to and from whom appellant purchased his asserted interest in the ditch and water-right in 1906, testified that he

lived in the neighborhood of the land of the plaintiff for about thirty years and knew the Preadmore or Hufford ditch for that period of time. He then testified: "It conveys water from the Oak Run Creek into the Hufford place. . . . I had the Hufford place rented in 1903, 1904, and 1905. . . . I used the water for making hay and after haying and until it got cold weather in the fall I used it to bring the grass up. . . . I had the ditch cleaned out the year 1904. . . . No one else used the water that year that I know of. The ditches were full of water when I got the place from Dodd in the fall of 1903. . . . As a matter of fact that ditch in the summer time needs to be full of water to use on this orchard and meadow. It is necessary to have it all. You don't use it every day, but about half of the time; but in order to get the best results you have to have the ditch full of water. . . . I aimed to irrigate it every ten or twelve days or two weeks. I would turn the water on for four or five days or a week. I would turn the water on the orchard and let it run there and then on the hay land. I would irrigate the orchard about once a month and the hay land about once a week. In order to get the best results you have to have the ditch full of water, but half of the time it would not be needed at all. I used it less than half of the time, but a man who raises alfalfa and garden would naturally use more than I did."

These are the only persons testifying who had ever been in the occupation of the Preadmore land and used the waters from the ditch. Two other witnesses—Alpaugh and Strayer—testified on the subject. Neither of them had ever occupied the Preadmore or Hufford place. They had lived in the vicinity for some thirty years and testified as to their observations of the extent to which the various-occupants of the land used the water on it. Alpaugh thought that Solomon Hufford had used all the water the ditch would carry; after his death the respondent occupied the land for three years and used the water about the same as Solomon Hufford did; that various other persons occupied the Hufford place, including Dodd, Howell, and Estep, and used the ditch and waters as the previous tenants and Solomon Hufford had. The testimony of the witness Strayer was addressed to casual observations of the use of the water by respondent and other occupants of the land. He was no more definite in his testimony as to the

actual use than Alpaugh, and it is apparent that all his testimony, as well as Alpaugh's was based more on the quantity of water which in their judgment could have been used on the entire tract if it had all been cultivated, than what was actually used for irrigation of the smaller tract which was alone cultivated. There is nothing in their testimony definitely showing that any more extensive use of these waters on the Hufford place was ever had than as testified to by respondent, Howell, and Estep.

Giving the fullest effect to this testimony all it proves is that plaintiff and his predecessors made an intermittent use of these waters. At such periods as were necessary they made use of all of them; at other times but a partial use. In the general run they were used but one half of the time during the irrigating season, in the intervals running off as natural waste down the sloughs on the Estep place back into the Creek. Undoubtedly, the plaintiff under the evidence, as the original appropriator of the water, had a paramount right to the first flow thereof to his land and in a full ditch because the best results through irrigation are attained with the ditch at that capacity, and a right to the use of all the waters at such times as was necessary for him to use them and to the extent of such previous use. But when this is conceded to him he has secured all he is entitled to. He is only entitled to what he needs and when he needs it and has no right to complain of another appropriator taking it for beneficial purposes when he has no use for it. The use of water in this state is of such great necessity as to preclude its being allowed to run to waste and its full beneficial and economical use requires, that when the wants of one appropriator are supplied another may be permitted to use the flow for his benefit.

In this view, as the evidence shows that neither respondent nor his predecessors have used these waters except for occasional periods during the irrigating season, the finding that all the waters have been appropriated by them and have been and are applied to a continuous beneficial use on land now owned by the plaintiff, is not sustained by the evidence, and this being true the appellant had a right to make an appropriation of these waters for use upon his land at such times as respondent had no use for them.

We think it of no moment that the appellant did not in

his pleading expressly claim any right to these waters as an appropriator. He denied the claim of respondent to either the necessity for or continuous actual use of all of them and set up a general right of ownership in himself to a use of a portion of them, and it is conceded that until enjoined he was actually diverting a portion and applying it for beneficial purposes upon his land. Whether such diversion is effective between appellant and third parties is not now of consequence. As an appropriator of waters for use, where the paramount right of respondent thereto was not interfering with, his appropriation was good as against any question of it by the latter. Respondent has no right to complain that the appellant is taking waters during a period when, while assuming to appropriate them, respondent really allows them to run to waste or fails to apply them to a beneficial use.

And while the court found, as far as the ditch is concerned from which appellant was taking the waters, that the respondent had acquired title to it by prescriptive right as against appellant as a cotenant therein, the evidence does not sustain it. The only use which the respondent has made of the ditch has been to convey the waters for use upon the land to the extent that he was entitled to their beneficial use. As a cotenant in possession respondent had a right to use the ditch for that purpose as long as his cotenant made no use of it and such use did not amount to an ouster or adverse holding.

As we are satisfied therefore that neither the finding of prescriptive right to the ditch nor the finding that respondent is entitled as an appropriator to all the waters of Oak Run Creek diverted therefrom through the ditch are sustained by the evidence a new trial must be ordered.

In making such order it may be stated that the evidence does not show definitely what amount of water is actually diverted by the ditch nor what amount is necessary or has been applied to use on his lands by respondent, nor at what periods during the irrigating season there is the greatest necessity for such use by him. In this situation it may be suggested that upon a new trial these matters should be ascertained as far as it is practicable to do so. If there is not water enough (and this appears to be the fact) to permit a diversion of the stream and a simultaneous use of part by

both parties without injury, the court may by its decree fix the times when, by rotation, the whole may be used by each at different times in proportion to their respective rights. In doing so, the court should recognize the paramount and primary right of the respondent to the first flow in a full ditch and the use of all of it, or a lesser quantity, for given periods during the irrigating season as it may be required. If this can be done so that by giving respondent the first flow for a week or every other week or on certain days in the week, and the appellant the right thereto in the intervals, the wants of respondent are fully supplied; he obtains all he is entitled to and has no ground of complaint. While this remedy of rotation in the use of waters for irrigation purposes has been more generally applied as between riparian proprietors (*Wiggins* v. *Muscupiable etc. Co.*, 113 Cal. 182, [54 Am. St. Rep. 337, 32 L. R. A. 667, 45 Pac. 160]; *Smith* v. *Corbit*, 116 Cal. 587, [48 Pac. 725]) in principle there is no reason why it should not be made applicable as between claimants by appropriation. It is applied as between riparian owners to permit the beneficial use of the waters by all, and as by appropriation only the right to a beneficial use is acquired, there is no reason why, when it can be justly made applicable, the same rule of rotation should not be applied as between appropriators.

The judgment and order appealed from are reversed.

Shaw, J., Melvin, J., Henshaw, J., Angellotti, J., and Sloss, J., concurred.