[Civ. No. 2153.  Third Appellate District.—June 29, 1920.]

## ASA PEAKE, Executor, etc., Appellant, v. MARGARET HARRIS et al., Respondents.

[1] PLEADING—DENIAL ON INFORMATION AND BELIEF—KNOWLEDGE OF TRUTH—JUDGMENT ON PLEADINGS.—Denials in an answer on information and belief, with knowledge or means of knowledge of the truth or falsity of the allegations whether affirmative or negative in form, may be disregarded by the court, and where in such case the answer fails otherwise to put in issue the material allegations of the complaint, judgment may and should be on motion duly presented, rendered, and entered on the pleadings.

[2] WATERS AND WATER RIGHTS—ACTION FOR INJUNCTION—PLEADING—ISSUE—IMMATERIAL DENIAL.—In an action for injunctive relief and damages against the defendants for the alleged wrongful interference with a water right to which plaintiff claims to be entitled, where the answer of the defendants admits that the plaintiff is entitled to the use of a certain designated quantity of the waters flowing in the creek in question, but directly denies the allegation of the complaint that the plaintiff is entitled to the quantity of water claimed by him in his complaint and then sets up a claim and right of the defendants to use one-half of the water of said creek, the issue as to the respective rights of the parties in the waters of said creek is squarely and directly made and tendered; and a further affirmative denial, on information and belief, that the plaintiff, and his predecessors, have never used more than a given amount of the waters of said creek, is wholly unnecessary and immaterial.

[3] ID.—ALTERNATIVE USE OF WATER—EVIDENCE—INTERLOCUTORY DECREE.—Where, on the trial of such an action, the evidence shows that for many years during the period of low water both the plaintiff and the defendants have been using the waters of the creek in question alternatively, one party using all of it for a time and then the other party all of it for a time, the court may properly continue the further hearing of the case until after the summer months have passed, awarding to each of the parties the right to use all the waters of the creek for specified alternative

periods during such months, in order to obtain additional and more satisfactory evidence by means of a practical test as to how the waters of the creek could be so used by the parties as to preserve to each their respective rights thereto.

[4] ID.—USE OF WATER IN ROTATION—EVIDENCE—JUDGMENT.—Where, in such an action, the evidence shows that, in the low-water seasons, there is not a sufficient quantity or flow of water in the creek to permit a diversion of the stream and a simultaneous use of part by both parties without injury and it is clear from the evidence that both parties are entitled to the use of the waters of the creek, the plaintiff's rights being prior and superior to those of the defendants, the court is justified in finding that each is entitled to the use of the waters, in proportion to their respective rights, at different times, and in fixing the times when and the periods during which the parties should each have the exclusive right to use said waters.

[5] ID. — RELIEF ASKED — JUDGMENT AUTHORIZED. — Where the issue made by the pleadings in such action is as to how much of the water of the creek, if any, each of the parties is entitled to take and use, it is within the power or discretion of the court to award to either party all or less than their pleadings claimed and asked for, according as the evidence warranted.

[6] ID.—COSTS—RIGHTS OF PARTIES.—Such an action being in fact and effect one for the determination of adverse or conflicting claims to water rights, and, therefore, one involving the title to real property, both the plaintiff and the defendants, each having asked for affirmative relief, and each having secured in part by the decree some of the relief for which they respectively asked, are entitled to costs as a matter of right; and it is error for the court to adjudge that neither the plaintiff nor the defendants should recover costs.

[7] ID.—RIGHTS OF UPPER AND LOWER RIPARIAN OWNERS—EFFECT OF USE OR DISUSE.—As between upper and lower riparian owners in the waters of a common stream, each has the right to the reasonable use of the stream on his own land and this right is neither gained by use nor lost by disuse, but constitutes a part and parcel of the land and of the ownership thereof. (Opinion of supreme court on denial of hearing.)

[8] ID.—UNREASONABLE USE BY UPPER OWNER—INJUNCTION.—A lower riparian owner cannot complain of the use by an upper riparian owner, except by showing that the upper owner uses an unreasonable quantity of the stream, having regard to the needs of the

---

7. Effect of nonuser on rights of prior appr:or:ators of water, note, 30 L. R. A. 265.

Correlative rights of upper and lower proprieto ; generally, note, 41 L. R. A. 737.

lower owner, and, consequently, the lower owner cannot enjoin the use by an upper owner unless he alleges such unreasonable use to his injury. (Opinion of supreme court on denial of hearing.)

[9] ID.—USE OF LOWER OWNER—RIGHTS ACQUIRED.—A lower riparian owner gains nothing as against an upper riparian owner by the mere use of the water upon his own land, as the upper owner is not concerned with the use made of the water after it passes beyond his boundary. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Tehama County. John F. Ellison, Judge. Reversed in part; affirmed in part.

The facts are stated in the opinion of the court.

H. D. Jerrett for Appellant.

W. P. Johnson and W. A. Fish for Respondents.

HART, J.—The plaintiff seeks injunctive relief and damages against the defendants for the alleged wrongful interference with a water right to which plaintiff claims to be entitled and for damage already sustained by the plaintiff by reason of such interference.

The dispute between the parties arises over the right to the use of the waters of North Elder Creek, in Tehama County. Said creek has its source in township 25 north, range 8 west, Mount Diablo base and meridian, and flows across defendants' land in section 21 to the lands of plaintiff in section 20. Plaintiff claims through an appropriation, made by one of his testator's predecessors in interest, in 1860, of three hundred inches of water measured under a four-inch pressure. Defendants' claim is based upon the fact that, in 1876, their ancestor, O. W. Harris, a homestead entryman, appropriated water from said creek for use on the lands now owned by defendants which are riparian to said stream, and that since that time he and they have made beneficial use of the water "to the extent of one-half of said creek during the summer months when the water is low, and at other times not less than one hundred miner's inches of water."

The court found that ever since the year 1860 George M. Lowrey, his grantors and predecessors, have owned and claimed, and his estate does now own and claim, by right of appropriation and use, all the waters of North Elder Creek as hereinafter stated and defined; that said North Elder Creek has its source in the Yollo Bolly range of mountains, and has a natural course easterly to the low arid lands, and emptying into the Sacramento River, all in said county of Tehama, in the state of California, and said North Elder Creek in its natural course flows through, over, and upon said tract of land of plaintiff, thereby causing said tract of land to be riparian to and irrigable therefrom, and making said tract of land fit for cultivation and for all other purposes for which an owner of land bordering on a running stream has a right to use the waters thereof; that George M. Lowrey, his grantors and predecessors, have constructed and maintained at all times since said year 1860, dams, ditches, and other head works for controlling, regulating, conveying, and utilizing said water flow in said creek to the extent of the appropriation to and upon said tract of land of plaintiff, and for the general distribution of the same over and upon said tract of land, and said works have been, and are now, except as and until interrupted and prevented by said defendants, as hereinafter stated, being used to divert, convey, distribute, and utilize the said waters of said creek, to the extent of George M. Lowrey's appropriation for the purpose of irrigating said lands, for watering cattle and stock and for household and domestic purposes thereon, and making said lands of beneficial use to the plaintiff; that during the summer months plaintiff's appropriation and needs exceed the natural flow of water in said creek, and that at the time of the filing of the complaint in this action there were but thirty inches of water measured under a four-inch pressure flowing in said North Elder Creek above plaintiff's point of diversion; that for two years last past the defendants have at times wrongfully and without right, by means of two ditches and a dam erected across said North Elder Creek about one-half mile above plaintiff's head works and point of diversion, diverted said waters away from the natural bed of said creek and away from the plaintiff, and conducted the same by means of said ditch to and upon the land of defendants; that said water so

diverted does not return to the said creek whence it is diverted by said defendants, but finds its way into the natural channel of a stream known as and called Middle Elder Creek, and the said water now being conveyed by the said defendants' ditches to their said land at times comprises the entire flow of said creek, and leaves the plaintiff without water for the necessary irrigation of his land, and the purposes aforesaid; that the defendants are the owners of and entitled to divert a portion of the waters of said North Elder Creek at the place of diversion, and have so used the waters upon the lands described in the answer, said creek in its natural course flowing through and upon the said last-mentioned land, and said land being riparian to said stream and irrigable therefrom; that in or about the year 1876 said O. W. Harris, the predecessor in interest in the land described in the complaint, constructed a dam in said creek and ditch leading therefrom at a place in the southeast quarter of the northwest quarter of said section 20, said ditch being three feet wide and one and one-half feet deep, and conducted water from said creek to and upon the land of said defendants; that said O. W. Harris and the defendants have used continuously each year since the construction of said dam and ditch the waters from said stream for household and domestic purpose, for watering stock and for irrigating said portion of said land, as aforesaid.

The court further found (Finding XIII): "That during the times when there was plenty of water in said creek sufficient for the use of both George M. Lowrey and defendants, said O. W. Harris, in his lifetime, and since his death the said defendants, diverted the waters of said stream to the capacity of their said ditch, or thereabouts, and in sufficient quantity for use upon their said lands for the purposes above set forth, except in the summer in times of low water, and at such times they have not diverted any of the waters of said stream, except as herein stated." Finding XIV: "That there is now planted and growing on said premises about fifteen acres of alfalfa, and about two acres of orchard and garden; that defendants have upon said premises six horses, forty-five head of cattle, sixteen hogs, and about seven dozen poultry." Finding XV: "That said water to the extent that it has been used is necessary for

the purpose of irrigating said land, and for watering stock, and for household purposes; that the well from which the defendants obtain their supply of water for household purposes is supplied from water in said creek, and if the water is shut off or does not flow in said ditch, said well will not furnish a sufficient amount of water for household purposes.'' Finding XVI: ''That in times of low water the amount diverted by defendants has not been sufficient for their needs, but they claim the right to divert at said times one-half of the waters flowing in said creek, which claim, as hereinafter stated, is without right.'' Finding XVII: ''As to the respective appropriations of waters of said creek by the plaintiff and the defendants, the court finds that the plaintiff's appropriation of the waters of said creek for irrigation and domestic purposes is prior in point of time and superior in right to the appropriation made by the defendants and to their rights to the waters of said creek; that at all times since the appropriation of said waters made by the plaintiff, as aforesaid, the plaintiff has only used the waters of said creek for irrigation for a part of the time and when needed, and his use of the waters for irrigation has been intermittent; that from the 1st of October to the 1st of May in ordinary seasons there has been plenty of water in said creek so that each could use one-half thereof without interfering or lessening the necessary use of the other; that during the period from May 1st to October 1st, during the dry season of the year, the plaintiff at times has required and used all the waters of said creek for the irrigation of his crops, and then has ceased using it until the ground again became dry; that such use by the plaintiff for the irrigation of his lands of the waters of said creek during the dry or summer season of the year has not exceeded in point of time more than two-thirds of the days in a month at the outside, and when irrigating has needed and used all the waters flowing in said creek for the purpose of irrigation, and the use thereof made was reasonable and the amount used was necessary for the irrigation of his crops and orchard.'' Finding XVIII: ''That at all times since defendants' ancestor settled upon the lands above described he and the defendants and the plaintiff in this action have used the waters of said creek for the irrigation of their lands, and their said irrigation has been inter-

mittent and alternating, the plaintiff using it when needed a part of the time, and the defendants using it a part of the time, but the plaintiff has at all times claimed, and has had in his ditch, even when not irrigating his land, water sufficient for the watering of his stock and for domestic purposes." Finding XIX: "The court finds that the plaintiff, by prior appropriation and use, has the right, and has acquired the right in the waters of said creek, as follows: The right to have flow down the creek and taken into his ditch from the first day of October to the first day of May in each year one-half of the natural flow of said stream. At all times he has the right to have flow down the stream and in his ditch, and this right is prior to any rights of the defendants, sufficient water for the watering of his stock and for household and domestic purposes, which the court finds is fifteen inches continuous flow, measured under a four-inch pressure. And the court finds that the defendants have the right and have acquired the right to the waters of said creek, as follows, to wit: The right to take out of said creek and use for irrigation and domestic purposes at all times between the first day of October and the first day of May in each year one-half the natural flow of said stream." Finding XX: "The court finds that without detriment to the plaintiff's right or to the defendants' that a decree may be entered permitting the plaintiff to use the waters of said stream part of the time, and permitting the defendants to use the waters of said stream part of the time, reserving always to the plaintiff the right to enough water for stock and domestic purposes." Finding XXI: "The court finds that the plaintiff's rights in and to said creek and the waters thereof from the first day of May each year to the first day of October each year are as follows, to wit: He has the right and is entitled to have sufficient water flow down the creek to fill his present ditch, even if it takes all the water in the creek to fill it, for the period of eight days, beginning with the first day of May of each year, and not exceeding two hundred inches at the point near his residence. At the end of eight days the defendants have the right and are entitled to turn into their ditch enough water to fill it for four days; the plaintiff and the defendants to have the right to use it alternately

48 Cal. App.—24

thereafter eight days and four days, respectively, provided, however, that the defendants shall at all times permit as much as fifteen inches of water flow down the creek past their dam and the in-take of their ditch to furnish water to the plaintiff for stock and domestic purposes."

Judgment was rendered as follows: That plaintiff and defendants are each entitled to one-half the natural flow of said stream from the first day of October to the first day of May; that the plaintiff is entitled at all times to fifteen inches° continuous flow for household and domestic purposes; that between the first day of May and the first day of October of each year plaintiff has "the right to have sufficient water flow down the creek to fill the present ditch, even if it takes all the waters of the creek to fill it, for the period of eight days, beginning the first day of May of each year, and not exceeding two hundred inches at the point near the Lowrey residence, measured under a four-inch pressure; that defendants have the right and are entitled to turn into their ditch enough water to fill it for four days thereafter," plaintiff "and the defendants to have the right to use it alternately thereafter eight days and four days, respectively, until the first day of October of each year." Judgment was also awarded plaintiff in the sum of one hundred dollars damages for the diversion of the waters of said creek. The appeal is by plaintiff from said judgment.

It is first contended by appellant that the court erred in denying his motion for judgment on the pleadings. The motion was based upon the following allegation in the answer: "Allege on information and belief that plaintiff and his predecessors in interest have never used on said land through their said ditch or otherwise, more than one hundred inches of the water from said creek measured under a four-inch pressure for the irrigation of said land, or for any other purpose; and allege that during the summer months they have never used on said land more than one-half of the waters flowing in said creek at the place of diversion by the ditch of defendants as hereinafter set forth." The position of the plaintiff is that allegations or denials made in a pleading on information and belief, where it is plain that there is knowledge or means of knowledge as to the truth or falsity of such allegations or denials do not state

issuable facts or tender an issue upon a material fact. The case of *Le Breton* v. *Stanley Contracting Co.*, 15 Cal. App. 429, [114 Pac. 1028], is cited as in support of that proposition. [1] The rule referred to is well settled and understood, and is, that denials in an answer on information and belief, with knowledge or means of knowledge of the truth or falsity of the allegations whether affirmative or negative in form, may be disregarded by the court (*Mullally* v. *Townsend*, 119 Cal. 52, [50 Pac. 1066]), and where in such case the answer fails otherwise to put in issue the material allegations of the complaint, judgment may and should be, on motion duly presented, rendered and entered on the pleadings. (*Doll* v. *Good*, 38 Cal. 287.) That rule, however, cannot be given application in this instance. It is, indeed, very doubtful whether it applies at all to a matter such as that to which the criticised allegation of the answer relates, for it is hardly to be supposed that such a matter is within the knowledge of the defendant or that he has the means of acquiring knowledge of the fact. Unless a person be an expert measurer of flowing waters, it is not likely that he would know or could learn, unaided by an expert, how much water is flowing in a creek or a ditch or the quantity of water which has customarily flowed in such creek or ditch for an extended period of years. But we think the allegation is, in view of the real issues made by the pleadings, wholly unnecessary and immaterial.

[2] The complaint alleges that, ever since the year 1860, plaintiff, his grantors and predecessors, have owned and claimed and "does now own and claim, by right of appropriation, three hundred inches, measured under a four-inch pressure, of the natural flow of that certain stream of water having its source in the Yollo Bolly range of mountains, known as and called North Elder Creek," etc., and that said defendants claim adversely to the plaintiff, "that they have the right to divert and use, above the point of plaintiff's diversion, the water of said North Elder Creek to the extent of the whole flow thereof, during the summer months when the water is low, and at the time that this plaintiff has need of the water of said creek to the extent of his said appropriation for the purpose for which this plaintiff is entitled to use the same, and claims adversely to

this plaintiff, that said right belongs to said defendants; that all of said claims of defendants are without right," etc.

The answer specifically denies the foregoing allegations of the complaint, and avers that the defendants "have never claimed adversely, or at any time, the whole of the waters of the said creek, but allege that they claim, adversely to plaintiff, that they have the right to divert and use above the point of plaintiff's diversion the waters of said . . . creek to the extent of one-half of the flow thereof during the summer months, when the water is low, and at other times not less than one hundred miner's inches of water." It is further alleged in the answer that the defendants have continuously appropriated and used for a beneficial purpose for over five years immediately preceding the commencement of this action one-half of the flow of the waters of said creek in the manner and at the times above indicated.

Thus it will be seen that the answer admits that the plaintiff is entitled to the use of a certain designated quantity of the waters flowing in said creek, but directly denies the allegation of the complaint that the plaintiff is entitled to the quantity of water claimed by him in his complaint and then sets up a claim and right of defendants to use one-half of the waters of said creek, and thus it is clear that the issue as to the respective rights of the parties in the waters of said creek is squarely and directly made and tendered. Therefore, if the · allegation in the answer, founded upon information and belief, that the plaintiff and his predecessors, etc., have never used on said plaintiff's land more than one hundred inches of the waters of said creek, measured under a four-inch pressure, for the irrigation of his land, were entirely eliminated from the answer, there would still remain the principal or · all-important issue, directly raised by the pleadings, to wit: The question as to the respective rights of the parties, as to quantity, to the waters flowing in said creek. It follows that the denial of the plaintiff's motion for judgment on the pleadings was proper.

[3] The next assignment involves the action of the court in making what appears to be an intermediate order whereby it awarded to each of the parties the right to use the waters of the creek at different times during the summer months immediately following the making of said order. · The

opinion of the court, which embraced the order referred to, is in part as follows: "The evidence in this case shows that, for many years, both the plaintiff and the defendant have been using the waters of North Elder Creek for purposes of irrigation. At low stages of the creek they have used the waters thereof alternatively, one party using all of it for a time, and then the other all of it for a time. . . . The case in its final decision must be controlled by the principles announced in such cases as *Hufford* v. *Dye,* 162 Cal. 147, [121 Pac. 400]. And on the facts of this case I am satisfied, following the principles announced by the supreme court, I have the power and should during the times of low water permit a use of the entire flow of the stream first by one party and then by the other. A use of the water in this manner during the present summer will throw light on the wisdom of the order I shall make, and if it is found not to work well in practice it can be changed on a final decision of the case. The case will be continued for a further hearing until after the summer months have passed, at which time evidence may be introduced showing how the order of the court has worked as to the use of the waters of the stream, and also as to how many inches of water properly and economically used is reasonably necessary for the irrigation of the lands of the respective parties, and evidence may be introduced on other features of the case.''

The contention of the appellant is that the court was without authority or jurisdiction to make an intermediate order such as the above.

It may be conceded that the decision of the controversy could not be made to depend or rest alone upon the question whether the temporary order designating or specifying the respective rights of the parties in the waters in question would so operate in its practical application as to give to each of the parties an opportunity for using so much of said waters as might be necessary for the purposes of each, but it appears that, before making the order, the court had in effect found that the plaintiff and the defendants were each entitled to the use of said waters in certain indicated quantities, the former having a prior or superior right thereto by reason of his prior appropriation of the waters of said stream. Such a finding is implied from the statement embraced in the order that "the case in its final decision must be controlled by the principles announced in

such cases as *Hufford* v. *Dye,* 162 Cal. 147, [121 Pac. 400]."
In that case it is said: 1. "That one making an appropria-
tion of the waters of a stream acquires no title to the waters
but only a right to their beneficial use and only to the extent
that they are employed for that purpose." 2. That where
there are two or more appropriators of the waters of the
same stream and it is found, as here, that there is not
water enough to permit a diversion of the stream and a
simultaneous use of part by both or all the parties without
injury, "the court may by its decree fix the times when, by
rotation, the whole may be used by each at different times
in proportion to their respective rights." It was, therefore,
proper for the court to postpone the further hearing of the
case for the purpose, as was the express object of the order
complained of, of facilitating the procurement of further and
perhaps more satisfactory evidence than was before it upon
the question up to the time that said order was made, as to
how the waters of the creek could be so used by the parties
as to preserve to each his just rights therein, as already
found by the court. In other words, it was proper for
the court to give to the parties an opportunity for secur-
ing and presenting evidence, based upon or growing out of a
practical test of the matter, which would enable the court
to so frame its decree upon the findings made or which it
declared must be made upon the evidence then before it as
to give to the parties the benefit, as far as the circumstances
would permit, of their respective appropriations, keeping in
view, of course, the prior and superior rights of the plaintiff.
But even if the court was without authority to make so
much of the order as authorized a practical test of how
or in what way the waters might be used by both parties
without injury to the rights of either, it certainly had the
right to postpone the further hearing of the case for the
purpose of securing additional evidence on "other features
of the case" which was material and necessary for a proper
decision of the controversy, and it may be added that,
as to the practical test, the order in that respect is now and
was at the time of the final decision *functus officio,* and is
now without prejudice to the plaintiff so far as a decision
on the merits is concerned, except perhaps as to any damage
which he might have suffered to his rights from such test,
which proposition could, if properly presented, have been

considered by the court in its award of damages in the final decision.

It is next claimed that the evidence was insufficient to justify Findings Nos. XIX, XX, XXI, XXII, and a certain portion of Finding No. XVII. The portion of the last-mentioned finding which it is urged was not so justified is to the effect that plaintiff has used only a portion of the waters of said creek for irrigation for a part of the time; that at times he has required the use of all the waters of the creek, but that in the dry season such use has not exceeded more than two-thirds of the days in a month.

We shall not attempt, nor is it deemed necessary, to reproduce herein the testimony or even an extended *résumé* thereof to show that the attack upon the findings above mentioned is without a substantial foundation for its support. The findings referred to are hereinabove set forth.

These facts are not disputed: That the land of the plaintiff and that of the defendants are riparian to and irrigable from North Elder Creek; that the plaintiff and the defendants, through their respective grantors and predecessors in interest, each acquired by appropriation the right to the use of the waters of the creek in question in the years 1860 and 1876 or 1877, respectively; that the plaintiff, in the year first named, appropriated three hundred inches of the waters of said creek, measured under a four-inch pressure, it being claimed by the defendants, however, that the plaintiff never used or had use for more than one hundred inches of said waters until after they (the defendants) had made and recorded their appropriation; that O. W. Harris filed with the county recorder of Tehama County, on the twentieth day of March, 1877, a "notice of water right," reciting that he had appropriated "the water of North Elder Creek . . . and diverted the same at a point on the S. E. quarter of the N. E. quarter of the N. W. quarter of Sec. 20, Tp. 25, N. R. 6 W., by means of a dam at said point where this notice is posted and ditch three feet wide and one and one-half feet deep, conducting said water to the extent of three hundred inches measured under a four-inch pressure, to and upon" the land above described, and "claims the water of said . . . creek by right of appropriation and continued annual use from 1876 to the present time and to the extent" above specified, "and he intends to claim and continue the

use thereof and to divert the same at a point aforesaid for said purposes''—that is, for agricultural purposes; that said notice was duly signed and dated by said O. W. Harris, the predecessors of the defendants, and was recorded in the office of the county recorder of Tehama County at the request of G. M. Lowrey, plaintiff's intestate.

[4] As to whether the court was justified from the evidence in apportioning the use of the waters of the creek between the contending parties in the manner indicated by its findings and in ordering by its decree the use of the waters by the parties alternately—that is, in fixing the times when, by rotation, the waters flowing in the creek may be used by each at different times in proportion to their respective rights—it is sufficient to say: That we have carefully gone over and examined all the evidence, and that from such investigation it is clear that, in the low-water seasons, there is not a sufficient quantity or flow of water in the creek "to permit a diversion of the stream and a simultaneous use of part by both parties without injury,'' and that, since it is further clear from the evidence that both parties are entitled to the use of the waters of the creek, the plaintiff's rights being prior and superior to those of the defendants, the court was justified in finding that each was entitled to the use of the waters, in proportion to his rights, at different times, and was further justified by the evidence and the findings in that particular in fixing the times when and the periods during which the parties should each have the exclusive right to use said waters. It is made clearly to appear that the plaintiff's intestate, during his lifetime, not only never objected to the use of the waters of the creek by the defendants so long as such use did not impair or materially interfere with his rights, but recognized the validity of the claim of the defendants to the right, by appropriation, to the use of the waters of the creek by requesting the recordation of or causing to be recorded in the office of the county recorder of Tehama County the notice of the defendants or their immediate predecessor of their appropriation of a specified quantity of the waters flowing in said creek. Indeed, there is evidence which shows, as the court found, that the parties for many years have used the waters of the creek alternately or at different times and thus in such manner that neither was injured, but ob-

tained as much of the waters as were flowing in the creek during the irrigating seasons. The evidence further shows that the lands of the plaintiff requiring irrigation never exceeded in quantity over thirty acres, and, as the trial court declared in its written opinion, which is incorporated into the record here, "the court might almost take judicial knowledge of the fact that it is not a reasonable use of water to put three hundred inches on thirty acres of alfalfa, and no one can acquire title to three hundred inches by so doing." It may further be added that the evidence shows that no trouble or dispute ever arose between the parties or their respective predecessors in interest concerning the use of the waters of the creek until a few weeks prior to the date of the commencement of this action, when, it appears, one of the Lowreys went to the defendants and ordered them to desist in further diverting the waters into their ditches, said Lowrey claiming that there was not enough water for the concurrent use of it by both parties, but the defendants refused to comply with Lowrey's request, and someone within a few days thereafter destroyed the dam of the defendants.

But we need not further advert herein to the evidence. Our conclusion is that the findings and the decree most equitably adjust the rights of the parties upon the evidence disclosing the situation. It will be observed that the court not only finds and decrees that from the first day of May to the first day of October of each year the plaintiff shall be entitled to have sufficient water flow down the creek "to fill his present ditch, even if it shall require all the water in the creek to fill it for the period of eight days, beginning with the first day of May of each year," etc., but that defendants, who are found to be entitled to turn enough water into their ditch at the end of eight days, covering plaintiff's right to fill said ditch, for four days, shall *at all* times permit as much as fifteen inches of water to flow down the creek past their dam and the intake of their ditch to furnish water to the plaintiff for stock and domestic purposes. In other words, while the finding and the decree authorize an alternate use of the water by plaintiff and defendants for a period of eight and four days, respectively, from the first of May to the first of October of each year, they also require the defendants, during their four-day use of the water, to

allow at the same time fifteen inches of water to pass on
beyond their dam and the intake of their ditch to the plain-
tiff for the latter's stock and domestic uses and purposes.
The rights of the plaintiff appear thus to be fully preserved.
Indeed, he could not have been awarded more than he has
received without denying to the defendants any right to the
waters of the stream whatsoever, and this the court could
not have done without repudiating the evidence disclosing
that for years each of the parties had been using the waters
intermittently and alternately—one taking the exclusive use
during the irrigating seasons for a certain few days and the
other following with a like use.

That such an adjustment of the rights of parties to the
waters of a creek under such a situation as is presented here
—that is, an award of the use of waters by rotation—is
permissible as well between claimants of water by appropria-
tion as between riparian proprietors, is established in this
state by the case of *Hufford* v. *Dye,* 162 Cal. 147, 160, 161,
[121 Pac. 400].

[5] But it is argued by plaintiff that, since the com-
plaint and answer do not directly ask that the alternate use
of the water be adjudged, nor the complaint ask that the
plaintiff be awarded fifteen inches of water for domestic
purposes during the periods when the waters are being used
by the defendants, the findings and the judgment in those
particulars are not within the issues made by the pleadings.
We cannot agree to this view. The important issue made
by the pleadings is as to how much of the water of the creek,
if any, each of the parties is entitled to take and use, the
plaintiff alleging and claiming that he is entitled under his
appropriation to the use of three hundred inches, measured
under a four-inch pressure, and the defendants alleging and
claiming that they are entitled to the use of one-half of the
water flowing in the creek. The evidence was addressed to
the question of how much of the waters, if any, the plaintiff
was entitled to use and whether he had a prior or superior
right thereto and the further question of how much, if any,
the defendants were entitled to use, and no one will question
the proposition that it was within the power or discretion of
the court to award to either all or less than their pleadings
claimed and asked for, according as the evidence warranted,
and this practically is all that the court by its findings and

decree has done. The adoption of the remedy or method of rotation was, according to the findings, the only way in which the parties could obtain what the court found that each was entitled to under the evidence. In other words, that course was the only one whereby the court's decree admeasuring to the parties the quantity of water to which they were entitled could be given practical enforcement or operation in view of the situation with respect to the quantity of water ordinarily flowing in the creek in low-water seasons, and, therefore, it was within the power of the court under the issues as well as necessary under the evidence to adopt that course.

The contention that the finding (No. XXII) that the plaintiff is entitled to one hundred dollars only as damages for the wrongful diversion of the water by the defendants is not supported, since, as is the claim, the evidence shows that the damage sustained by plaintiff because of the said wrongful acts of defendants was greater than that allowed by the court, is without merit. We shall not attempt to detail herein the evidence as to this. It is sufficient to say that our examination of the evidence has convinced us that it failed to disclose any very serious injury to the plaintiff as the result of the said acts of defendants, and we conclude, from an examination of the record, that the sum of one hundred dollars represents reasonably fair compensation for the detriment ensuing to the plaintiff from the wrongful diversion of the water by defendants.

[6] It is lastly contended that the judgment, in so far as it adjudged that neither the plaintiff nor defendants should recover costs, is erroneous, it being the position of the plaintiff that, inasmuch as he was granted some relief, he should be allowed his costs. The specific contention is that the action, while in form for an injunction, is in fact and effect one for the determination of adverse or conflicting claims to water rights, and, therefore, involves the title to real estate, as to which character of actions our code provides that costs are allowed *of course* to the plaintiff upon a judgment in his favor. (Code Civ. Proc., sec. 1022, subd. 5.) We think that the contention is sound, and must be sustained.

The action here involves the title to a water right which is an appurtenance to the lands described in the pleadings, and it has been held that such an action comes within the

description of the actions mentioned in subdivision 5 of section 1022 of the Code of Civil Procedure. (*Hoyt* v. *Hart,* 149 Cal. 722, 730, 731, [87 Pac. 569]; *Northern Cal. Power Co.* v. *Waller,* 174 Cal. 377, 388, [163 Pac. 214], and cases therein cited.) Both the plaintiff and the defendants, the latter having asked for affirmative relief in their answer, each secured in part by the decree some of the relief for which they respectively asked. The plaintiff as well as the defendants was, therefore, entitled to costs as a matter of right. (*F. A. Hihn Co.* v. *City of Santa Cruz,* 24 Cal. App. 365, [141 Pac. 391]; *Schmidt* v. *Klotz,* 130 Cal. 223, [62 Pac. 470]; *Hoyt* v. *Hart, supra.*)

The judgment, in so far as it adjudged that ''each party to this action shall pay his own costs and expenses hereof,'' is reversed, with directions to the court below to allow costs to each of the parties. The remaining portion of the judgment—that is, the portion other than the portion relating to costs—is affirmed.

Burnett, J., and Nicol, P. J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 26, 1920, and the following opinion then rendered thereon:

THE COURT.—The petition for rehearing in this court is denied. But in denying the same we think it is necessary to make a statement of the reasons therefor.

The plaintiff's predecessors and the defendants' predecessors in interest each owned a quarter-section of land having a common north and south boundary, plaintiff's lying east and defendants' west of the common line. The stream in controversy ran through both tracts from the west toward the east, first entering the defendants' land and then through the plaintiff's land. The result is that the plaintiff is the lower riparian proprietor and the defendants the upper riparian proprietors.

It appears from the findings that the plaintiff and his predecessors have diverted water from the stream and used it on said quarter-section of land ever since the year 1860, claiming the right under an alleged appropriation and use, and

that the defendants and their predecessors in interest have
used the waters of the stream on their western quarter-
section ever since the year 1876. The court below found
that by virtue of such use on the lower riparian tract the
plaintiff had acquired a right thereto as against the claims
of the defendants as owner of the upper tract to the extent
of the plaintiff's continuous use; that this use did not
include the entire time; that the stream was so small that a
division of the rights could better be made by rotation of
the use than by a division of the volume of the waters.
Thereupon the court found, among other things, that from
October 1st to May 1st of each year plaintiff and defendants
were each entitled to one-half the natural flow of the stream,
but that from May 1st to October 1st of each year the
plaintiff was entitled to have the entire flow for eight days
and the defendants the entire flow for the next four days
and so on alternately during said irrigating season. In
effect this was a finding that the plaintiff by his adverse
use on the lower riparian tract had acquired, as against
the defendants owning the upper riparian tract, the right
to two-thirds of the waters of the stream.

There is nothing in the findings or in the complaint to
show that the plaintiff or his predecessors in interest had
ever actually claimed that their use was adverse to the
riparian rights of the defendants' predecessors on the upper
tract, or that such use by the plaintiff on the tract below in
any way interfered with the use of the waters of the stream
on the tract above, or that the natural conditions entitled
plaintiff to more than his proportion measured by the area
of his tract. The court below and the district court of
appeal, as well as the respective parties, appear to have mis-
apprehended the law with respect to the reciprocal rights of
upper and lower riparian owners in the waters of a common
stream. [7] The decisions are unanimous to the effect
that each of such owners has the right to the reasonable use
of the stream on his own land and that this right is neither
gained by use nor lost by disuse, but constitutes a part and
parcel of the land and of the ownership thereof. (*Har-
grave* v. *Cook,* 108 Cal. 77, [30 L. R. A. 390, 41 Pac. 18];
*Duckworth* v. *Watsonville etc. Co.,* 150 Cal. 520, [89 Pac.
338]; *Huffner* v. *Sawday,* 153 Cal. 91, [94 Pac. 424].) [8]
It is also settled that the lower riparian owner, the plaintiff

being such owner, cannot complain of the use by an upper riparian owner except by showing that the upper owner uses an unreasonable quantity of the stream, having regard to the needs of the lower owner, and, consequently, that the lower owner cannot enjoin the use by an upper owner unless he alleges such unreasonable use to his injury. (*Swift v. Goodrich,* 70 Cal. 105, [11 Pac. 561]; *Hargrave* v. *Cook, supra; Heilbron* v. *Land etc. Co.,* 80 Cal. 193, [22 Pac. 62]; *Anaheim W. Co.* v. *Semi-Tropic Co.,* 64 Cal. 192, [30 Pac. 623].) **[9]** It follows from these principles that the lower owner gained nothing as against the upper owner by the mere use of the water upon his own land, since, as the above decisions hold, the upper owner was not concerned with the use made of the water after it passed beyond his boundaries. The plaintiff and his predecessors in interest could not gain any right against the defendants by the long-continued use of the water upon the lower tract of land.

If the defendants were complaining of the judgment we would be bound to hold that it was erroneous against them, so far as the findings purport to uphold it. But in this case the defendants are not appealing. The plaintiff contends that he has the right to more waters of the stream than is given him by the judgment and upon that ground he took the appeal. The district court, having affirmed the judgment, he now asks for a rehearing at the hands of this court. From what we have said, it will be seen that the plaintiff has already secured a judgment for a larger amount than he is entitled to, consequently he is not entitled to another hearing of this case.

Shaw, J., Olney, J., Wilbur, J., Lennon, J., and Lawlor, J., concurred.